In re NEW YORK INTERNATIONAL HOSTEL, INC., Debtor.

MIHNLONG ENTERPRISES, INC., Plaintiff–Appellee,

v.

NEW YORK INTERNATIONAL HOSTEL, INC. and 43rd Street Development Corp., Defendants.

43RD STREET DEVELOPMENT CORP. and Common Ground Community HDFC, Inc., as successor-in-interest, Third–Party Plaintiffs,

v.

TIME PLAZA, INC. (previously known as Castle Development), Tran Dinh Troung, Bac Tran, Tho Tran and Alphonse Hotel Corp., Third–Party Defendants–Appellees.

No. 92 Civ. 8076 (JFK).

United States District Court, S.D. New York.

Aug. 12, 1993.

Donovan Leisure Newton & Irvine, New York City, for Common Ground Community HDFC, Inc.; A. Peter Lubitz, of counsel.

Weisman & Weisman, New York City, for 43rd Street Development Corp.; Herbert Weisman, of counsel.

Alan H. Lichtenberg, P.C., New York City, for Tran Dihn Troung, Bac Tran and Alphonse Hotel Corp.

Silverberg, Stonehill & Goldsmith, P.C., New York City, for Mihnlong Enterprises, Inc.; Clyde Schaefer, of counsel.

Epstein Becker & Green, P.C., New York City, for the debtor; Ephraim Leibowitz, of counsel.

KEENAN, District Judge:

### INTRODUCTION

Defendants/Third–Party–Plaintiffs/Appellants 43rd Street Development Corp. ("43rd Street") and Common Ground Community HDFC, Inc. ("Common Ground") (collectively, "Appellants") appeal from an Order of the United States Bankruptcy Court for the Southern District of New York, Brozman, J., dismissing Appellants' counter- and third-party claims on the grounds (1) that the bankruptcy court lacked subject matter jurisdiction over defendants' counter- and third-party claims and (2) that defendants lacked standing under 11 U.S.C. Section 549 to assert those claims. On appeal, Appellants contend chiefly that the bankruptcy court has subject matter jurisdiction and that the defendants have standing to assert their claims under an order approving the sale of the debtor's property pursuant to 11 U.S.C. Section 363. For the reasons set forth below, the bankruptcy court order is affirmed in part, reversed in part and re-

manded for further proceedings in accordance with this opinion.

### BACKGROUND

On June 11, 1988, New York International Hostel, Inc. ("Debtor"), then the owner of a single-room-occupancy hotel in Manhattan, filed a Chapter 11 petition with the United States Bankruptcy Court for the Southern District of New York.[1] *See* Order of Tina Brozman, United States Bankruptcy Judge, dated July 15, 1992 ("July Order"), 142 B.R. 90, 93. Pursuant to a stock proxy granted by Debtor's sole shareholder, third-party defendant Troung installed himself as president of the debtor-in-possession. *Id.* With the consent of the Debtor's various secured and unsecured creditors, Troung contracted with third-party defendant Alphonse Hotel Corp. ("Alphonse") to fund, manage and control the hotel pursuant to a Management and Funding Agreement entered into on November 23, 1988 and approved by the bankruptcy court on February 15, 1989. *Id.* The Management Agreement provided that Troung and Alphonse could "negotiate service and other contracts ... not to exceed a six-month period without the approval of the Bankruptcy Court." Appellant's Designation of Items to be Included in the Record on Appeal ("Record"), Document 22 at Exhibit A at 4.

Troung caused Debtor to enter into two leases during his tenure as president of the debtor-in-possession. *See* July Order at 92–93. The first, with third-party defendant Time Plaza, Inc. ("Time Plaza"), was entered into on December 16, 1988, two months before the Management Agreement was approved by the bankruptcy court, and was for a term of ten years. *See* Record, Document 22 at Exhibit B. The second, with Plaintiff Mihnlong, was entered into on March 15, 1989, a month after the Bankruptcy Court approved the Management Agreement, and was also for a term of ten years. *See* Record, Document 22 at Exhibit C. Neither Troung nor Alphonse sought or received the approval

of the bankruptcy court for either of the leases. *See* July Order at 93.

Troung and Alphonse withdrew from the management of the hotel in December 1989. *Id.* On June 14, 1990, after efforts to sell the hotel proved unsuccessful, 43rd Street, Debtor's first mortgagee, credit bid the full amount of its claim against the Debtor pursuant to 11 U.S.C. Section 363(k). *Id.* The bankruptcy court authorized the sale of the hotel on August 7, 1990. *See* Order of Tina Brozman, United States Bankruptcy Judge, dated August 7, 1990 at 3–4 ("Sale Order"). The sale closed several months later and Common Ground, 43rd Street's assignee, took title. *See* July Order at 93.

Plaintiff/Appellee Mihnlong commenced an adversary proceeding on January 9, 1991 seeking a declaration that the lease it entered into with Debtor through Troung and Alphonse was valid. *See* July Order at 93. Appellants answered, asserting a counterclaim against Mihnlong and third-party claims against Troung, Alphonse, Time Plaza and others, seeking a declaration pursuant to 11 U.S.C. Section 549 that the leases entered were void ab initio as violative of the court-approved management contract. The bankruptcy court below dismissed Appellants' claims for lack of jurisdiction and lack of standing under Section 549. *See* July Order. This appeal followed.

### DISCUSSION

#### A. *Subject Matter Jurisdiction*

■ The question of subject matter jurisdiction is reviewed *de novo*. *In re Wolverine Radio, Co.*, 930 F.2d 1132, 1138 (6th Cir.1991); *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986).

The bankruptcy court's jurisdiction over matters involving nondebtors is delineated in 28 U.S.C. Section 1334. *In re Wolverine*, 930 F.2d at 1140. Section 1334 enumerates four types of matters over which the bankruptcy courts have jurisdiction:

---

1. On April 4, 1991, the bankruptcy court converted the proceeding to a Chapter 7 liquidation.

*See* July Order, 142 B.R. 90, 93.

1) "cases under title 11," i.e., the filing of the bankruptcy petition itself; *Matter of Wood,* 825 F.2d 90, 92 (5th Cir.1987); 2) "proceedings arising under title 11," 3) proceedings "arising in" a case under title 11, and 4) proceedings "related to" a case under title 11.

"For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under' or 'related to a case under' title 11. These references operate conjunctively to define the scope of jurisdiction." *Matter of Wood,* 825 F.2d at 93. Therefore, the bankruptcy court has subject matter jurisdiction over a proceeding if, at a minimum, the matter is "related to a case under title 11." *Id.*

█ The test for determining whether a civil proceeding is "related to" bankruptcy and thus within the bankruptcy court's jurisdiction is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Wolverine,* 930 F.2d at 1142 (quoting *In re Pacor, Inc.,* 743 F.2d 984, 994 (3rd Cir.1984) (emphasis omitted)); *accord A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1002, n. 11 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986); *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling of the estate." *In re North Star Contracting Corp.,* 146 B.R. 514 (S.D.N.Y. 1992). Additionally, the litigation must have a "significant connection" with the bankruptcy case. *In re Turner,* 724 F.2d 338 (2d Cir.1983).

█ Appellants' claims satisfy the threshold "related to" requirement. Were a decision rendered in Common Ground's and 43rd Street's favor on the merits of the third-party and counterclaims, Mihnlong and the third-party defendants might bring suit against the Debtor for having entered into the leases in violation of the court-approved Management Agreement. Because such claims could conceivably alter the Debtor's liabilities, the claims are "related to" the bankruptcy and therefore the bankruptcy court has jurisdiction over the matter pursuant to Section 1334(b). *See In re Fietz,* 852 F.2d at 857.

█ Additionally, Appellants' claims, which effectively seek enforcement of a prior bankruptcy court order involving the Debtor's property, have a "significant connection" with the bankruptcy case. *In re Lafayette Radio Electronics Corp.,* 761 F.2d 84, 92 n. 6 (2d Cir.1985) (action to enforce express order of bankruptcy court has "significant connection" to underlying bankruptcy). Further, "the bankruptcy court has jurisdiction over an action to which the debtor was not a party [when] the action center[s] on an order of the bankruptcy court." *In re Ross,* 64 B.R. 829, 834 (S.D.N.Y.1986) (citing *In re Lafayette Radio Electronics Corp.,* 761 F.2d at 92). Here, Appellants seek effectuation of the bankruptcy court's Sale Order, which purports to transfer title to the Hotel "free and clear of any and all liens, claims ... interests, mortgages, guaranties ... encumbrances ... security agreements, pledges, charges, option and rights of recision ... whether arising prior to or subsequent to the date of the filing of the [Sale Order]." Sale Order at ¶ 3. The bankruptcy court has jurisdiction to reach the merits of Appellants' claims with respect to the validity of the leases in question in light of the language of the Sale Order. While Appellants' claims make only tangential reference to the Sale Order, upon remand Appellants may amend to state more fully their claims pursuant to the Sale Order. *See In re Shearn Moody, Jr.,* 899 F.2d 383, 386 (5th Cir.1990).

Having determined that the bankruptcy court has subject matter jurisdiction over Appellants' claims, it is now necessary to determine the scope of that jurisdiction.

■ 28 U.S.C. Section 157 defines the parameters of the bankruptcy court's jurisdiction to hear and adjudicate cases and proceedings referred to them by the district courts pursuant to 28 U.S.C. Section 1334. *In re Orion Pictures Corp., et al.,* 139 B.R. 785, 787 (S.D.N.Y.1992). 28 U.S.C. Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings under title 11, and may enter appropriate orders and judgments."

Core proceedings are defined as "matters that govern the administration of the debtor's estate," *In re Orion,* 139 B.R. at 787, and that consist of matters "arising under title 11" or "arising in a case under title 11." *In re Wood,* 825 F.2d at 96. "If the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy, then it is not a core proceeding." *In re Wolverine,* 930 F.2d at 1144.

Appellants' claim, which seeks enforcement of an order entered by the bankruptcy court pursuant to 11 U.S.C. Section 363(k) and 11 U.S.C. Section 105, "invokes a substantive right created by federal bankruptcy law" and thus falls within the bankruptcy court's core jurisdiction. *In re Wolverine,* 930 F.2d at 1144; *see In re White Motor Credit Corp.,* 75 B.R. 944, 947 (Bankr.N.D.Ohio 1987), *aff'd,* 831 F.2d 106 (6th Cir.1987) ("As a proceeding ancillary to an order of sale ... the proceeding at bar is within the court's core jurisdiction.").

### B. *Standing*

■ Whether Appellants have standing to litigate the validity of the leases in question requires a two-tiered analysis: first, whether Appellants have standing under the constitution and certain prudential concepts that limit constitutional standing; and second, whether Appellants have statutory standing to invoke Section 549 avoidance powers. *See Matter of Pointer,* 952 F.2d 82, 85 (5th Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992).

### 1. *Constitutional and Prudential Standing*

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Standing under Article III depends on whether the plaintiff can "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) and *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)).

"The term 'standing' subsumes a blend of constitutional requirements and prudential considerations." *Valley Forge,* 454 U.S. at 471, 102 S.Ct. at 758. Among these prudential considerations is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205.

■ Appellants' claims, which seek to invalidate the leases as violative of the Sale Order, satisfy the prudential and constitutional requirements for standing. The Sale Order expressly defines Common Ground as a purchaser of the Hotel. *See* Sale Order at ¶ D ("43rd Street Development Co., its designee or assignee (the "Purchaser") is a party acting in good faith as that term is utilized by the Bankruptcy Code."). The Sale Order purports to sell the Hotel to the Purchaser, defined to include 43rd Street's assignee, Common Ground, free of all encumbrances. Sale Order at ¶ 3. Common Ground is thus asserting its own

interests as the Purchaser in seeking to effectuate the terms of the Sale Order.

### 2. *Standing Under 11 U.S.C. § 549*

Having determined that Appellants' claims pass constitutional muster, we must next consider whether Appellants have statutory standing to sue under 11 U.S.C. Section 549.

11 U.S.C. Section 549 provides that:

Except as provided in subsection (b) or (c) of this title, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(B) that is not authorized under this title or by the court.

Standing to invoke the avoidance powers contained in Section 549 is, by the express terms of the statute, granted to the trustee and, pursuant to 11 U.S.C. Section 1107(a), the Chapter 11 debtor-in-possession. *See In re V. Savino Oil & Heating Co., Inc.,* 91 B.R. 655, 656 (Bankr.E.D.N.Y.1988); *In re Ciavarella,* 28 B.R. 823, 825 (Bankr. S.D.N.Y.1983). "It is axiomatic that a duly qualified trustee in bankruptcy represents the estate and is the only proper party to maintain any action under [Section 549] ... and that the creditors of the estate have no right to proceed independently in their own names or on behalf of the estate." *Matter of Daniele Laundries, Inc.,* 40 B.R. 404, 408 (Bankr.S.D.N.Y.1984). Notwithstanding this general principle, courts have recognized a limited right for creditors to institute avoidance actions. *See, e.g., In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985) (recognizing "an implied, but qualified, right for creditors' committees to initiate adversary proceedings"). Such actions are permitted only upon "showings of particularly extraordinary circumstances," *In re V. Savino,* 91 B.R. at 656, and "when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a [post-petition] transfer." *In re STN,* 779 F.2d at 904.

The record contains no showing of "extraordinary circumstances" or abuse of discretion on the part of the Chapter 7 trustee. Further, while *creditors* may, in appropriate circumstances, have standing under Section 549 to avoid post-petition transfers, Appellants have cited no authority for the proposition that parties such as Appellants, who are not even creditors of the estate in bankruptcy, have standing to invoke the trustee's avoidance powers. Accordingly, the bankruptcy court's holding that Appellants lack standing under 11 U.S.C. Section 549 is affirmed. As discussed above, however, Appellants do have standing to litigate their claims pursuant to the Sale Order.

### *CONCLUSION*

For the reasons set forth above, the order of the bankruptcy court is affirmed in part, reversed in part and remanded to the bankruptcy court for the purpose of allowing Appellants to replead their claims under the terms of the Sale Order. This action is ordered removed from the Court's active docket.

**SO ORDERED.**