68 F.3d 26
 28 Bankr.Ct.Dec. 11, Bankr. L. Rep. P 76,669
 In re BEST PRODUCTS CO., INC., et al., Debtors.
RESOLUTION TRUST CORPORATION, as receiver for FarWest
Savings & Loan Association and ABQ Federal Savings
Bank, Appellant,
v.
BEST PRODUCTS CO., INC., et al., and Chemical Bank, as Agent
and Individually, Appellees.
 No. 152, Docket 95-5018.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 5, 1995.
Decided Oct. 10, 1995.
 
 Richard Lieb, New York City (Kronish, Lieb, Weiner & Hellman LLP, Joseph A. Guzinski, Tara Hannon, Daniel R. Alcott, of Counsel), for Appellant Resolution Trust Corporation.
 Harvey R. Miller, New York City (Weil, Gotshal & Manges, Kevin W. Barrett, Marc D. Puntus, of Counsel), for Appellee Best Products Co., Inc.
 Robert A. Bourque, New York City (Simpson Thacher & Bartlett, Lillian E. Kraemer, Melvyn L. Cantor, of Counsel), for Appellees Bank Group.
 Eric M. Roth, New York City (Wachtell, Lipton, Rosen & Katz, of Counsel), for Appellee Chemical Bank.
 Before: FEINBERG, KEARSE and LEVAL, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Resolution Trust Corporation (RTC) appeals from an order of the United States District Court for the Southern District of New York, Allen G. Schwartz, J., dismissing RTC's appeal from an order of the United States Bankruptcy Court for the Southern District, Tina L. Brozman, J., confirming a chapter 11 plan of reorganization for appellee Best Products Co., Inc. RTC primarily claims that the bankruptcy court did not have jurisdiction to enforce a pre-bankruptcy agreement subordinating notes held by RTC in favor of notes held by appellees Chemical Bank and various other financial institutions. RTC characterizes its objection to enforcement of the subordination agreement as merely a contract dispute between two creditors and argues that this dispute does not constitute a "core" proceeding within the meaning of 28 U.S.C. Sec. 157. Because the plan of reorganization had been fully consummated, the district court determined that effective relief could not be granted and dismissed RTC's appeal to it as moot. For reasons explained below, we assume that RTC's appeal was not moot but decide that the bankruptcy court did have jurisdiction to enforce the subordination agreement. We therefore uphold the decision of the bankruptcy court.
 
 I. Background
 
 2
 In January 1991, Best Products Co., Inc. and its affiliates (hereafter collectively, Best or Debtor) each filed a petition for relief under chapter 11 of the Bankruptcy Code. The chapter 11 cases were referred to the bankruptcy court and were consolidated and jointly administered. Thereafter, Best operated its business as a debtor in possession.
 
 
 3
 Best's chapter 11 petition was filed in the aftermath of a disastrous leveraged buyout (LBO) consummated in 1989. In connection with the LBO, Chemical Bank (as successor by merger to Manufacturers Hanover Trust Company) and various other financial institutions (collectively, the Bank Group) provided senior financing of about $622 million. Appellant RTC is the receiver for two failed depository institutions, FarWest Savings & Loan Association (FarWest) and ABQ Federal Savings Bank (ABQ), that also provided financing in connection with the LBO in the amount of approximately $28 million. A subordination agreement, dated September 17, 1990 (the Subordination Agreement), expressly stated that the financing provided by FarWest and ABQ was subordinate to the Bank Group's senior indebtedness. After commencement of the chapter 11 proceeding, the Bank Group and RTC, individually and as agent on behalf of FarWest and ABQ, filed proofs of claim against Best in the approximate amounts of $322 million and $28 million, respectively.
 
 
 4
 In December 1992, Best commenced various adversary proceedings in the bankruptcy court. The first challenged as unenforceable the loans made by the Bank Group, FarWest and ABQ because they were fraudulent conveyances pursuant to section 544(b) of the Bankruptcy Code (the LBO Action). In separate proceedings Best also sought, among other things, to void the granting of security interests to the Bank Group (the Bank Preference Action) and certain payments made to the RTC as voidable preferences under section 547 of the Bankruptcy Code. RTC moved in the bankruptcy court to dismiss the actions against it for lack of subject matter jurisdiction. RTC also requested the district court to withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. Sec. 157(d). In April 1994, Judge Haight of the district court refused to withdraw the reference. In re Best Products Co., Inc., No. 93-1115, No. 93-1149, 1994 WL 141970 (S.D.N.Y. April 20, 1994).
 
 A. The Plan
 
 5
 In January 1994, Best offered its fifth proposed plan of reorganization (the Plan). The bankruptcy court found, and the district court agreed, that one of the cornerstones of the Plan was the settlement of the LBO Action and the Bank Preference Action (the Settlement). Under the Plan and the Settlement, in exchange for dismissal with prejudice of Best's adversary proceedings against the Bank Group and allowance of the latter's claim of over $322 million, the Bank Group agreed to release its security interests in certain of Best's property and to "give up" to the general unsecured creditors a distribution of cash and stock valued at roughly $31 million. The Plan enforced the Subordination Agreement. As a consequence, RTC, as the receiver for subordinated creditors FarWest and ABQ, did not receive any recovery under the Plan other than the termination with prejudice of the LBO Action against RTC. The bankruptcy court found that the Bank Group would not have supported the Plan unless it provided for the enforcement of the Subordination Agreement.
 
 
 6
 Creditor support for the Plan was overwhelming. Only a few creditors, including RTC, contested approval of the Settlement and confirmation of the Plan. RTC challenged the Plan on the ground, among others, that the Plan impermissibly enforced the Subordination Agreement. The objections occasioned an eight-day evidentiary hearing, after which the bankruptcy court overruled all of the objections and confirmed the Plan. In an exhaustive opinion dated May 25, 1994, the bankruptcy court specifically held that it had jurisdiction to enforce the Subordination Agreement. In re Best Products, Co., Inc., 168 B.R. 35, 67 (Bankr.S.D.N.Y.1994).
 
 B. Proceedings in the District Court
 
 7
 RTC filed a timely notice of appeal to the district court. RTC did not, however, seek a stay of the confirmation order or of the consummation of the Plan either in the bankruptcy court or in the district court. On June 14, 1994, the Plan became effective and Best commenced implementation of the Plan. It is undisputed that the Plan has been substantially consummated.
 
 
 8
 The essence of RTC's appeal to the district court was that the bankruptcy court did not have jurisdiction to adjudicate what RTC describes as a contractual dispute between two creditors. The basis of RTC's underlying attack on enforcement of the Subordination Agreement was that the Bank Group's notes were not "due" because these notes were fraudulently conveyed to the Bank Group as part of the financing of the LBO. Therefore, subordination of RTC's notes to the Bank Group's notes was not justified.
 
 
 9
 In a thorough opinion dated January 20, 1995, reported at 177 B.R. 791 (S.D.N.Y.1995), Judge Schwartz held that RTC's appeal to him was moot and therefore did not reach the issue of the bankruptcy court's jurisdiction. The district judge found that "[t]here [could] be no doubt that the enforcement of the subordination agreements was an essential element of the Plan which was inextricably interwoven with the Settlement and other elements of the Plan." Id. at 801. Therefore, if the Plan's enforcement of the Subordination Agreement were reversed on appeal, the Plan would unravel and Best would have to return to the bankruptcy court as a non-discharged debtor. The district court further determined that, because RTC had not sought to stay execution of the Plan, thousands of transactions had taken place and it would be impossible to restore all parties to their pre-consummation status. Judge Schwartz held that RTC's failure to take any steps to prevent the Plan from taking effect rendered the fashioning of effective relief both impossible and inequitable. The judge therefore dismissed RTC's appeal. Id. at 802-03.
 
 
 10
 RTC again appealed, this time to this court.
 
 II. Discussion
 
 11
 Before us, RTC principally argues that a challenge to a court's subject matter jurisdiction can never be moot. It asks us to remand this case to the district court for a determination of the proper jurisdiction of the bankruptcy court and presumably, if RTC's position on that court's jurisdiction is correct, for an eventual determination by the district court of the merits of the underlying dispute.
 
 
 12
 Our review of orders of district courts in their capacity as appellate courts in bankruptcy cases is plenary. In re Manville Forest Products Corp., 896 F.2d 1384, 1388 (2d Cir.1990). We therefore independently review the factual findings and legal conclusions of the bankruptcy court. Id.; Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir.1987). We must accept the bankruptcy court's findings of fact unless clearly erroneous; conclusions of law are reviewed de novo. In re Manville Forest Products Corp., 896 F.2d at 1388.
 
 A. Mootness
 
 13
 In bankruptcy, mootness involves equitable considerations as well as the requirement of Article III of the Constitution that there be a live case or controversy. In re Chateaugay Corp., 10 F.3d 944, 952 (2d Cir.1993). Article III requires that "[when] an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Church of Scientology of Cal. v. United States, 506 U.S. 9, ----, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). An appeal is also moot when "even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir.1993).
 
 
 14
 RTC argues that granting the relief requested on the merits is neither impossible nor inequitable. All that is required, according to RTC, is that the Bank Group pay over to RTC the distribution under the Plan the Bank Group received, which would have gone to RTC except for the Subordination Agreement. The payment of that distribution by the Bank Group to RTC would not unwind Best's reorganization, would not be an impermissible plan modification and would not affect the rights of anyone but the Bank Group. Such relief would not be inequitable because the Bank Group proceeded with implementation of the Plan when it was fully aware that RTC had objected to, and had appealed from, the order of the bankruptcy court confirming the Plan.
 
 
 15
 Appellees Best and the Bank Group respond that the relief sought by RTC would require revocation of the Settlement and the Plan. It would necessitate recovery of the distribution that the Bank Group "gave up" to the general unsecured creditors and would return Best to chapter 11 status. Moreover, the failure of RTC to seek a stay, thereby allowing consummation of the Plan, renders the granting of the relief inequitable.
 
 
 16
 Giving RTC the benefit of every doubt, it is at least conceivable that RTC's appeal was not moot. Because we believe that the issue of mootness is a more difficult question than the issue of the bankruptcy court's jurisdiction, and because the latter issue is clear-cut and relatively simple, sound judicial administration suggests that we decide it on the merits. It is true that the district court did not decide the issue of the bankruptcy court's jurisdiction but instead dismissed the appeal on mootness grounds. However, we do not see why we cannot decide the issue in view of our plenary power to review in bankruptcy. See Matter of Texas Extrusion Corp., 844 F.2d 1142, 1156-57 (5th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988). In a somewhat analogous situation, we are free to affirm a district court decision on any ground for which there is a record sufficient to permit conclusions of law, even a ground not relied upon by the district court. Leecan v. Lopes, 893 F.2d 1434, 1439 (2d Cir.), cert. denied, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987). Similarly, we may allow the decision of the bankruptcy court to stand on a ground not relied upon by the district court. Moreover, we do not think RTC can fairly complain of our decision to deal with the merits of the jurisdictional issue. It is RTC that argues that the appeal was not moot. True, RTC states that the jurisdictional issue should be determined by the district court first, but we believe that the issue has been sufficiently briefed in this court to allow us to decide it. Cf. Matter of Envirodyne Industries, Inc., 29 F.3d 301, 304 (7th Cir.1994).
 
 
 17
 B. Subject Matter Jurisdiction of the Bankruptcy Court
 
 
 18
 Given the foregoing, we turn to RTC's claim that the bankruptcy court did not have jurisdiction to enforce the Subordination Agreement. The jurisdiction of the bankruptcy court is set forth in 28 U.S.C. Sec. 157. Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 ... and may enter appropriate orders and judgments...." (emphasis added). A bankruptcy judge may also hear non-core proceedings that are otherwise related to a title 11 case. In such a proceeding, however, the bankruptcy judge may not determine the issue, but may only submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. Sec. 157(c)(1).
 
 
 19
 Section 157(b)(2) provides a non-exclusive list of proceedings that Congress has deemed core, for example, 157(b)(2)(A) (matters concerning the administration of the estate), 157(b)(2)(F) (proceedings to determine, avoid, or recover preferences), 157(b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances), 157(b)(2)(K) (determinations of the validity, extent, or priority of liens), 157(b)(2)(L) (confirmations of plans), and 157(b)(2)(O) (other proceedings affecting debtor-creditor relationships). Some of these listed items are so broad that they "could be construed to include almost any matter relating to bankruptcy...." In re Ben Cooper, Inc., 896 F.2d 1394, 1398 (2d Cir.), vacated, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), reinstated, 924 F.2d 36 (2d Cir.1991). We recognize that such an open-ended, limitless construction would be incorrect. A determination of whether a matter is "core" depends on the nature of the proceeding. In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 707 (2d Cir.1995).
 
 
 20
 Our attempt to construe the language of Sec. 157(b)(2) properly must begin with the Supreme Court's plurality opinion in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Marathon involved a pre-petition breach of contract action brought by a chapter 11 debtor in the bankruptcy court. The defendant in that action had not filed a proof of claim and had no other connection with the bankruptcy. The Supreme Court explained that while the restructuring of debtor-creditor relationships is at the core of the federal bankruptcy power, the adjudication of state-created private rights is not. Id. at 71, 102 S.Ct. at 2871. Because these "non-core," private rights must be adjudicated by an Article III judge, the Court invalidated the broad grant of jurisdiction to bankruptcy courts provided for in the Bankruptcy Act of 1978, 28 U.S.C. Sec. 1471. Id. at 87, 102 S.Ct. at 2880.
 
 
 21
 In response to this decision, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, which codified the core/non-core distinction. This court has concluded that the Marathon holding was a narrow one and has broadly construed the jurisdictional grant in the 1984 amendments. See In re S.G. Phillips Constructors, Inc., 45 F.3d at 705; In re Ben Cooper, Inc., 896 F.2d at 1398. In the latter case, id. at 1398-99, we quoted with approval the First Circuit's analysis of the legislative history of section 157:
 
 
 22
 [T]he legislative history of [section 157] indicates that Congress intended that "core proceedings" would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings. See 130 Cong.Rec. E1108-E1110 (daily ed. March 20, 1984) (statement of Representative Kastenmeier); id. at H1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness).
 
 
 23
 In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir.1987) (Breyer, J.).
 
 
 24
 The dispute here involves enforcement of a contractual subordination agreement between parties that filed proofs of claim against the Debtor. Settlement of this dispute is essential to the administration of the estate. 28 U.S.C. Sec. 157(b)(2)(A). Section 510(a) of the Bankruptcy Code provides for the enforcement of subordination agreements to the same extent that such agreements are enforceable under nonbankruptcy law. 11 U.S.C. Sec. 510(a). A cause of action based on this provision is markedly different from traditional "Marathon -type," non-core matters. Fixing the order of priority of creditor claims against a debtor is an integral and historic bankruptcy function, and without this power the bankruptcy court would be rendered powerless to rehabilitate a debtor. While enforcing subordination agreements is not listed as a core proceeding, the power to prioritize distributions has long been recognized as an essential element of bankruptcy law. See In re Kings Falls Power Corp., 185 B.R. 431 (Bankr.N.D.N.Y.1995); Germain v. Connecticut National Bank, 988 F.2d 1323, 1329-30 (2d Cir.1993) (disputes "involving the determination of ... which creditors are senior in the creditor hierarchy" are "vital to the bankruptcy process"). As the bankruptcy court here correctly noted,it is hard to imagine an issue that is more at the heart of the bankruptcy process than is this. Enforcement of a contractual subordination agreement clearly involves the adjustment of the debtor-creditor relationship, determinations of the priority of liens, and administration of the estate and so falls within the ambit of 28 U.S.C. Sec. 157(b)(2)(A), (K), and (O).
 
 
 25
 In re Best Products Co., Inc., 168 B.R. at 66-67.
 
 
 26
 RTC asserts that In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir.1993), cert. dismissed, --- U.S. ----, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994), stands for the proposition that the "catch-all" provisions of 157(b)(2) must be read narrowly. We do not agree. In that case, we stated, "it is clear that Congress intended 157(b)-(2)(A)'s designation of matters relating to the administration of the estate as core to encompass a wide range of matters...." Id. at 1102. We merely found that allowing that subsection to encompass "[a]ny [breach of] contract action that the debtor would pursue ... [and that] would be expected to inure to the benefit of the debtor estate" would create an exception to Marathon that would swallow the rule. Id. (emphasis added). Orion Pictures involved a breach of contract action by a debtor against a party to a pre-petition contract that had not filed a proof of claim with the bankruptcy court, exactly the situation in Marathon. The only relationship the action had to the bankruptcy proceeding was that determination of the action would affect the ultimate size of the estate. Unlike a proceeding that simply seeks to augment the estate, the present proceeding involves the priority rights of creditors who have filed claims against the estate.
 
 
 27
 RTC strongly urges that the present controversy merely involves RTC and the Bank Group, and does not concern the Debtor in any way. However, the Subordination Agreement, signed by the Bank Group, FarWest, ABQ and Best, sets forth the relative priority of Best's obligations. Moreover, the fact that Best filed briefs and argued in favor of enforcing the Subordination Agreement in both the district court and this court belies the claim that Best had no interest in this controversy. Determination of the priority rights of various creditors to assets of the Debtor was necessary to administer the estate and was not merely a dispute between two creditors.
 
 
 28
 RTC also argues that the bankruptcy court erred by holding that RTC, by filing a proof of claim, consented to the jurisdiction of the bankruptcy court over the contractual subordination dispute. RTC says that the concept of consent is not applicable because RTC was required by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. Sec. 1821(d)(2)(B)(ii), to maximize its recovery and therefore it had to file its claim. However, that RTC may have been statutorily mandated to file a claim in this situation is irrelevant. In In re S.G. Phillips, the City of Burlington, Vermont argued that when a creditor files a proof of claim under protest in order to avoid losing its rights in bankruptcy, it does not consent to determination of its claims by the bankruptcy court, and the creditor preserves its right to object to the bankruptcy court's jurisdiction. We ruled that because adjudication of Burlington's claim was a core proceeding, the bankruptcy court had jurisdiction regardless of whether consent should be inferred from Burlington's filing of the proof of claim. In re S.G. Phillips Constructors, Inc., 45 F.3d at 707. The same reasoning applies here.
 
 
 29
 RTC further argues that the filing of a proof of claim only subjects disputes that are part of the "claims-allowance" process to the jurisdiction of the bankruptcy court. See Germain, 988 F.2d at 1329. RTC states that the subordination dispute was not part of the "claims-allowance " process because it is undisputed that its claim was allowed; indeed, allowance of RTC's claim was necessary for the Bank Group to receive RTC's distribution by enforcement of the Subordination Agreement. Here too, however, since we have determined that enforcement of that agreement in the context here presented is itself a core proceeding, reliance upon the filing of a proof of claim is unnecessary to establish jurisdiction.
 
 
 30
 RTC further argues that this "simple contract dispute" could not be heard within the context of a plan confirmation, but required a full adversary proceeding. The claims of the Bank Group on its loans were allowed pursuant to the bankruptcy court's power to provide for the settlement of any claim belonging to the Debtor. 11 U.S.C. Sec. 1123(b)(3)(A). Contrary to RTC's assertions, in providing for the settlement of the Debtor's LBO Action and Bank Preference Action and the claims of the Bank Group against the Debtor, the bankruptcy court was not required to decide the merits of every issue underlying these claims. The bankruptcy court merely had to satisfy itself that the Settlement was within the range of reasonableness. In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 768 (Bankr.S.D.N.Y.1992); In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983) (construing similar language in former bankruptcy statute). In its careful opinion, the bankruptcy court properly made this determination. Both the Settlement and enforcement of the Subordination Agreement were provisions of the Plan, which was confirmed according to proper procedure. RTC's assertion that it was entitled to a full determination of the merits of its claim that the Bank Group's notes never became "due" is therefore meritless.
 
 
 31
 We have considered all of RTC's remaining arguments and find them to be without merit.
 
 III. Conclusion
 
 32
 To summarize, we hold that the bankruptcy court had jurisdiction over a core proceeding to enforce a contractual subordination agreement between parties that had filed proofs of claim against the Debtor's estate. We therefore uphold the decision of the bankruptcy court.