In re William Stewart **DALEY**, Debtor.

**LIDDLE & ROBINSON, L.L.P.,** Plaintiff,

v.

**William Stewart DALEY, Paul T. Shoemaker, and Greenfield Stein & Senior, L.L.P.,** Defendants.

Bankruptcy No. 97 B 47862(TLB). Adversary No. 98/8192A.

United States Bankruptcy Court, S.D. New York.

Sept. 8, 1998.

Liddle & Robinson by Blaine H. Bortnick, New York City, for plaintiff.

Kelly & Roth by William H. Roth, New York City, for defendants.

Law Office of Ian J. Gazes by Ian J. Gazes, New York City, Chapter 7 Trustee.

Marilyn Simon & Associates by Robert D. Raicht, New York City, for debtor.

## DECISION ON MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

TINA L. BROZMAN, Chief Judge.

Two creditors of the debtor, both law firms in which a fellow named Paul Shoemaker was or is a partner, are sparring in this adversary proceeding over the payment of one by William Daley, the debtor, to the detriment of the other. Liddle & Robinson ("L & R"), Shoemaker's former firm, charges that Shoemaker and his current law firm, Greenfield, Stein & Senior, L.L.P. ("GSS"), took money from Daley which he had promised to them. Shoemaker & GSS, on the grounds of lack of subject matter jurisdiction, move to dismiss so much of the complaint as alleges claims against them.

The relevant factual background can be found at *Greenfield, Stein & Senior, L.L.P. v. William Stewart Daley (In re William Stewart Daley)*, 222 B.R. 44 (Bankr.S.D.N.Y. 1998) (*"Daley I"*), familiarity with which is assumed. I recount here only those facts critical to an understanding of the issues.

### I.

Shoemaker was a partner at the firm now called L & R until February 1995. While there, he represented Daley in an employment action against Daley's former employer and, for a time, represented Daley in a matrimonial action as well. For these services, L & R says that Daley owes it $88,348.43. It is L & R's contention that Daley promised he would pay the firm from the proceeds of any recovery in the employment litigation before paying fees owed to any other attorneys. When Shoemaker left L & R for GSS, he allegedly offered to collect for L & R the fees owed it, including any sums relating to the employment litigation.

Daley was awarded $144,630.43 in November 1995 in the employment litigation (the "Proceeds"), which he paid to GSS, which was also owed fees. *See id.* at 45. L & R claims that Daley deliberately concealed this payment until he was examined this past January at the first meeting of creditors held pursuant to § 341 of the Bankruptcy Code. Learning of what it believes was Daley's duplicity, L & R sued Daley, Shoemaker and GSS to object to the former's discharge and to recover from the latter two its fees. The four causes of action relating to Daley's right to discharge his debt are not the subject of this motion; the remaining three are. The third cause of action alleges an actual fraudulent conveyance of the Proceeds by Daley to GSS, which Shoemaker and GSS are said to have aided and abetted. The other two causes of action allege unjust enrichment and breach of fiduciary duty solely against Shoemaker and GSS.

Jurisdiction to determine the claims asserted against GSS and Shoemaker is pinned to 28 U.S.C. § 1334(b) and Fed.R.Bankr.P. 7020 which incorporates the permissive joinder provisions of Fed.R.Civ.P. 20.[1] Chal-

---

1. Fed.R.Civ.P. 20(a) provides in pertinent part:
 All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any ques-

lenging subject matter jurisdiction, GSS and Shoemaker have moved to dismiss the complaint in lieu of answering it. They also ask for sanctions to be imposed against L & R on the theory that its complaint is frivolous, harassing and duplicative of pending state court litigation involving the same issues.

## II.

GSS asserts that I do not have jurisdiction over L & R's claims for unjust enrichment, fraud and breach of fiduciary duty because they do not arise under Title 11, or arise in or relate to a case under Title 11, the only predicates for bankruptcy jurisdiction. The lack of "related to" jurisdiction is keyed to the contention that resolution of these claims would have no effect on the debtor's estate. In the alternative, GSS maintains that if I were to find that I have "related to" jurisdiction, I must abstain from adjudicating these claims pursuant to 28 U.S.C. § 1334(c)(2) because they can be timely adjudicated in pending proceedings in a State forum of appropriate jurisdiction. GSS notes that, absent related to jurisdiction, these claims were not susceptible to litigation in a federal court.

L & R argues that, not only do I have jurisdiction, but that my jurisdiction is "core," that is, its claims against GSS and Shoemaker arise under Title 11 or arise in a case under Title 11. Specifically, L & R urges that its claims qualify as "matters concerning the administration of the estate," "proceedings to determine, avoid, or recover fraudulent conveyances," and "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship" pursuant to 28 U.S.C. § 157(b)(2)(A), (H) & (O). L & R anchors its contention that there is core jurisdiction on its fraudulent conveyance claim. *See* 11

U.S.C. § 157(b)(2)(H). Although L & R concedes that only a trustee may bring such an action, it requests in a footnote to its supplemental memorandum of law that I grant it leave to sue GSS in the trustee's place. L & R does not address how the unjust enrichment and breach of fiduciary duty claims arise under or arise in this bankruptcy proceeding but nonetheless argues that, at a minimum, I have non-core jurisdiction to hear these claims because they are related to the administration of the debtor's estate and the resolution of those claims could alter the debtor's rights and/or liabilities. To the request for abstention, L & R suggests that its claims cannot be timely adjudicated in the state forum and notes that the pending litigation does not, in any event, raise the fraud issues.

## III.

■■■ As implied above, we can make short shrift of the § 544(b) fraudulent conveyance cause of action. The claim is that Daley, after misrepresenting his intentions to L & R, transferred to GSS or Shoemaker, with the intent to defraud L & R, the Proceeds which he had promised to L & R. The requested relief is an interesting pastiche: L & R asks that the fraudulently transferred Proceeds be returned to the estate; notwithstanding that the estate would in that event recover all the monies said to have been transferred, L & R also asks that it be granted judgment against GSS and Shoemaker in the amount of its unpaid fees as well as punitive damages. Putting aside the hoped-for entitlement to two recoveries for the same wrong, what L & R ignores is that pursuant to 11 U.S.C. § 544(b), only the trustee has standing to bring a fraudulent conveyance action to avoid the debtor's

tion of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a). Given that the claims against GSS do arise out of the same transactions and occurrences as do the claims against Daley and that there are common issues of law and fact, permissive joinder is allowed at the court's sound discretion as long as joinder "will comport with the principles of fundamental fairness." *Shaw v. Munford*, 526 F.Supp. 1209, 1213 (S.D.N.Y.1981) (*quoting Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d

1371, 1375 (9th Cir.1980)). However, the court must otherwise have personal and subject matter jurisdiction over the defendants for permissive joinder to be granted. 10 L. King, *Collier on Bankruptcy* ¶ 7020.02, at 7020–2 (Matthew Bender & Co., Inc. 15th ed. rev.1998). Joinder alone is a rule of practicality and does not confer jurisdiction. *See Mitchell v. Delaware & H.R. Corp.*, 15 F.R.D. 187, 188 (N.D.N.Y.1953). Accordingly, reference to the bankruptcy rule adds little to the parties' debate.

transfer, unless a creditor or creditors' committee has been given approval by the bankruptcy court to sue in the trustee's stead. *See In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985) (holding that creditor's committee may initiate suit with bankruptcy court approval where trustee unjustifiably failed to bring suit or abused his or her discretion in not suing to avoid a preferential transfer); *Official Committee of Unsecured Creditors of America's Hobby Center, Inc. v. Hudson United Bank (In re America's Hobby Center, Inc.),* 223 B.R. 275, (Bankr.S.D.N.Y.1998); *Glinka v. Abraham and Rose Company Ltd.,* 199 B.R. 484, 493 (D.Vt.1996) (extending the holding of *STN* to an individual creditor in a chapter 7 case). Such approval requires a motion on notice followed by an appropriate showing as to why the trustee erred in determining not to bring suit.[2] A footnote in a memorandum of law does not suffice to establish entitlement to sue in the estate's behalf. Although I conveyed this defect to L & R's counsel at the hearing, no curative motion has been interposed. Accordingly, L & R has no standing to maintain a fraudulent conveyance action pursuant to § 544(b) against GSS and Shoemaker. *See Mihnlong Enterprises, Inc. v. New York International Hostel, Inc. (In re New York International Hostel),* 157 B.R. 748, 753 (S.D.N.Y.1993). With the failure of this claim falls the primary hook on which L & R pinned core jurisdiction. We turn, therefore, to the remaining claims, none of which is asserted against Daley.

### IV.

Challenges to a federal court's subject matter jurisdiction come in two forms, known as "facial" or "factual" attacks. *See* 2 D. Coquillette, *Moore's Federal Practice 3d,* § 12.30[4] at 12–38 (Matthew Bender 3d ed.1998); *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.,* 104 F.3d 1256, 1260 (11th Cir.1997); *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). The former questions the sufficiency of the pleadings and thus is limited to what has been pleaded, which is assumed for the purposes of the motion to be true. The latter questions whether the facts underlying the claim of jurisdiction are adequate to support the assertion of jurisdiction and, therefore, no presumption of truthfulness attaches to the allegations of the complaint. *See Garcia,* 104 F.3d at 1261. In this situation, the court may look beyond the complaint and even take evidence to resolve the jurisdictional issue. *See id.; Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Here, the challenge to subject matter jurisdiction is factual, the ultimate question being, as will become apparent, whether the claims against GSS and Shoemaker will have any conceivable effect upon the debtor's estate.

 Pursuant to 28 U.S.C. § 1334, bankruptcy courts have subject matter jurisdiction "of all civil proceedings arising under Title 11, or arising in or related to a case under Title 11." 28 U.S.C. § 1334(b). "Arising under" jurisdiction covers any cause of action created by Title 11, *see Glinka,* 199 B.R. at 490; *Silverman v. General Ry. Signal Co. (In re Leco Enterprises),* 144 B.R. 244, 248 (S.D.N.Y.1992); "arising in" jurisdiction encompasses causes of action that arise only in bankruptcy cases, that is, "matters not based on any right expressly created by Title 11, but that would have no existence outside of the bankruptcy." *Glinka,* 199 B.R. at 490 (*citing Leco,* 144 B.R. at 248); *see Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.),* 219 B.R. 363, 367 (Bankr.S.D.N.Y.1998). "Core proceed-

---

**2.** I discussed in *Daley I* that the Appellate Division of the New York Supreme Court, in a judgment now final, determined that Daley's former wife had the first claim to the Proceeds. There remained a question, after the Appellate Division ruled, whether the charging liens asserted by L & R and GSS had any vitality vis-à-vis the Proceeds after satisfaction of the former wife's debt. As will become clear from the remainder of the opinion on this motion to dismiss, it is unlikely that after satisfaction of her claim that there will be much money left out of the Proceeds for collection by Daley's estate. Indeed, probably recognizing this, Daley's trustee has filed a report indicating that the estate has no assets. Accordingly, even were L & R to properly move for leave to avoid the transfer, its ability to show that the trustee unjustifiably failed to bring suit would be slim at best.

ings," that is, those as to which the bankruptcy judge may enter a final order, are proceedings "arising under title 11" or "arising in a case under Title 11." *See id.; In re New York International Hostel, Inc.*, 157 B.R. 748, 752 (S.D.N.Y.1993); 28 U.S.C. § 157(b)(2). The scope of the bankruptcy court's core jurisdiction is set forth in 28 U.S.C. § 157(b). *See Resolution Trust Corporation v. Best Products Co., Inc. (In re Best Products Co., Inc.)*, 68 F.3d 26, 30 (2d Cir.1995).

## A. Core Jurisdiction

■ . Having concluded that I must dismiss L & R's § 544(b) cause of action, which would have been a core proceeding to determine, avoid, or recover a fraudulent conveyance pursuant to 28 U.S.C. § 157(b)(2)(H), the only remaining bases for core jurisdiction suggested by L & R are the catchall provisions of 28 U.S.C. § 157(b)(2)(A), that is, matters affecting the administration of the estate, and 28 U.S.C. § 157(b)(2)(O), other proceedings affecting the liquidation of the assets of the estate.

L & R has filed a proof of claim in the amount of $88,348.43 against the estate for attorneys' fees owed to it on account of work performed for the debtor before Shoemaker left to join GSS. This adversary proceeding is an attempt to recover from GSS those same fees as damages for GSS' asserted unjust enrichment, fraud and breach of fiduciary duty to L & R.[3] L & R alleges that it had an agreement with Daley that L & R would be paid first out of the Proceeds and an agreement with Shoemaker that he would liquidate any sums received on behalf of L & R and forward them to L & R. What L & R wants is for GSS to turn over the $88,348.43 L & R claims should have been transferred to it in the first place in accordance with the two agreements.

More than likely, there will be nothing here for the estate, in view of the amount of the Proceeds and of Daley's former wife's claim. *See Daley I*, 222 B.R. at 49. Nonetheless, whether a residue exists after her payment would be the jurisdictional touchstone were we concerned with secured claims. In that event, a residue could give rise to core jurisdiction over this intercreditor dispute out of the court's need to determine which firm's lien has priority. *See Best Products*, 68 F.3d at 31 ("Fixing the order of priority of creditor claims against a debtor is an integral and historic bankruptcy function, and without this power the bankruptcy court would be rendered powerless to rehabilitate a debtor."); *Gravel and Shea v. Vermont National Bank*, 162 B.R. 961, 967–968 (D.Vt. 1993) (holding that the bankruptcy court had core jurisdiction over an adversary proceeding between two creditors claiming liens to escrowed funds constituting proceeds of property of the estate). The rub, however, is that neither firm claimed secured or priority status in its proof of claim.

It has long been the law that where a creditor files a claim as unsecured, he waives the right to subsequently assert that claim as secured. *See In re Burr Mfg. & Supply Co.*, 217 F. 16, 20 (2d Cir.1914) (holding that "[a] secured creditor does not waive his security by proving his debt in the bankruptcy proceedings, if he proves it as a secured debt[, b]ut if he proves his debt as unsecured he waives the security."); *Sedgwick v. Stewart*, 21 F.Cas. 1004, 1005 (S.D.N.Y.1878) (holding that if "a person has a debt which is in judgment and proves the debt aside from the judgment, without naming the judgment, he will be held to intend to waive, discharge and surrender the judgment, and any lien under the judgment."); *United States Nat. Bank v. Chase Nat. Bank*, 331 U.S. 28, 33–34, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947) (holding that a secured creditor may surrender or waive his security by proving his entire claim as unsecured); *In re Lykes Bros. Steamship Co., Inc.*, 217 B.R. 304, 312 (Bankr.M.D.Fla. 1997) (holding that a creditor must indicate in his proof of claim the amount of his claim and the extent to which it is secured or unsecured lest he waive his right to set-off); *United States v. W.F. Monroe Cigar, Co. (In re W.F. Monroe Cigar, Co.)*, 166 B.R. 110, 113 (N.D.Ill.1994); *In re Krahn*, 124 B.R. 78, 80 (Bankr.D.Minn.1990). And here, the last day to file claims has passed, as a result of

---

**3.** L & R also seeks the imposition of punitive damages against GSS on the fraud claim.

which no new claim could be interposed in an attempt to undo a waiver.

Absent a priority battle over the possible residue, core jurisdiction could only be furnished by 28 U.S.C. §§ 157(b)(2)(A) and (O). The language of the catchall provisions is admittedly broad enough to encompass just about anything within its sweep; however, the Second Circuit has cautioned that although the "language of that sub-section could be construed to include almost any matter relating to bankruptcy, . . . the structure of the statute as a whole does not permit such a construction. Matters that merely concern the administration of the bankrupt estate tangentially are related, non-core proceedings." *Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1398 (2d Cir.1990). In *Ben Cooper*, the circuit court distinguished between suits arising out of contracts entered into prepetition and those entered into postpetition, holding that the former are non-core but the latter are core. *Id.* at 1400; *cf. Best Products*, 68 F.3d at 31 (citing *Ben Cooper* and stating that "an open-ended, limitless construction [of §§ 157(b)(2)(A) and (O)] would be incorrect. A determination of whether a matter is 'core' depends on the nature of the proceeding.").

■ From *Ben Cooper* we glean that claims whose genesis is unrelated to the bankruptcy case, that is, those which are rooted in the pre-bankruptcy past and are brought under non-bankruptcy law, do not arise under Title 11 or in a case under Title 11, but are at best non-core and, then, only if there is a basis for the assertion of "related to" jurisdiction. *See 610 W. 142 Owners*, 219 B.R. at 370–371, 372 (holding that prepetition state law causes of action for negligence and breach of fiduciary duty that do not involve the application of bankruptcy law are non-core proceedings); *New Jersey Bank v. Karcher, Salmond, Rainone & Barrett, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 759 (D.N.J. 1996) (holding to be non-core, garden variety prepetition contract, tort and malpractice claims that only peripherally involve the debtor); *N. Parent, Inc. v. Cotter & Compa-*

*ny (In re N. Parent, Inc.)*, 221 B.R. 609, 626, 629 (Bankr.D.Mass.1998); 1 L. King, *Collier on Bankruptcy*, ¶ 3.02[3][d] at 3–46 (Matthew Bender 15th ed. rev.1998) (criticizing as incorrectly decided those cases holding that actions against the debtor's former officers and directors for breach of fiduciary duty arising out of prepetition conduct are core proceedings under § 157(b)(2)(O)).

Since GSS and L & R are both unsecured non-priority creditors, they are entitled to share, *pro rata*, with all other similarly-situated creditors. Neither firm's unsecured claim has rights higher than the other's. Accordingly, there is no priority dispute to adjudicate with respect to a particular *res* held by the estate. Whereas I plainly have core jurisdiction to determine the *bona fides* of the unsecured proofs of claim, that is, for example, whether Daley's estate is liable for the fees billed to him, I do not have core jurisdiction with respect to the claims that L & R is asserting against GSS. So we proceed to determine whether I have "related to" jurisdiction.

**B. "Related To" Jurisdiction**

■ Causes of action owned by the debtor prior to its bankruptcy and which become property of the debtor's estate as well as suits between third parties which have an effect on the bankruptcy estate are bases for related to jurisdiction. *See Celotex v. Edwards*, 514 U.S. 300, 308 at fn. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The Supreme Court, in *Celotex*, addressed the meaning of "related to" in the latter context, endorsing the Third Circuit's test in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984):

> [t]he usual articulation of the test of whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . Thus, the proceeding need not necessarily be against the debtor or the debtor's estate. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling of the estate.

*Celotex,* 514 U.S. at 308, fn. 6, 115 S.Ct. 1493 (*citing Pacor,* 743 F.2d at 994). Noting that the Second and Seventh Circuits' tests were slightly different, but not disapproving of them, the Supreme Court instructed that "whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex,* 514 U.S. at 308, fn. 6, 115 S.Ct. 1493.

In *In re Turner,* 724 F.2d 338, 341 (2d Cir.1983), the Second Circuit held that the litigation must have a "significant connection" with the bankruptcy case in order for there to be "related to" jurisdiction. However, in *Publicker Indus., Inc. v. United States (In re Cuyahoga Equipment Corp.),* 980 F.2d 110, 114 (2d Cir.1992), the Second Circuit held that either a "significant connection" to or a "conceivable effect" on the bankruptcy would be sufficient to establish "related to" jurisdiction. *See In re Ralph Lauren Womenswear,* 204 B.R. 363, 374 (Bankr.S.D.N.Y. 1997).

■ "Related to" jurisdiction is broad, but not limitless. *See Celotex,* 514 U.S. at 308, 115 S.Ct. 1493. In *Elscint, Inc. v. First Wisconsin Financial Corp. (In re Xonics),* 813 F.2d 127 (7th Cir.1987), the Seventh Circuit faced a dispute between two creditors of a debtor where the property at issue had already been abandoned or distributed to the senior secured creditor. Judge Easterbrook, writing for the majority, explained

Suppose A, B, and C claim interests in a pool of oil. If A is a bankrupt, the bankruptcy court could determine the interests of all three in the property under 28 U.S.C. § 157(b)(2) or § 157(c)(1), because only after identifying the "property" of the estate may the court apportion that property among creditors. But if the estate should disclaim any interest in the pool, only the dispute between B and C would remain. The resolution of that dispute would not affect the creditors of the bankrupt, and there would be no source of jurisdiction. That B and C might also be creditors of the bankrupt would not enlarge the court's power; there is no jurisdiction to resolve all disputes among creditors of a bankrupt. There is jurisdiction

under § 157(c)(1) only when the dispute is "related to" the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors.... The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved.

*In re Xonics,* 813 F.2d at 131 (citations omitted). The court did find, however, that "related to" jurisdiction could exist if the intercreditor dispute would have any effect on other creditors of the debtor and remanded the case for such a determination. *See id.* at 132.

■ This case is very similar to *Xonics* to the extent that most of the Proceeds, if not all, are earmarked for Daley's former wife and the law firms have waived whatever entitlement to security (that is, the Proceeds), if any, which they may have had. The "disputes about their stakes in the bankrupt's property" having been fully resolved, the only question remaining, as in *Xonics,* is whether if L & R recovers its fees from GSS and Shoemaker under its claims for unjust enrichment, fraud and breach of fiduciary duty, the other creditors will be affected.

If L & R is paid by GSS or Shoemaker, L & R's unsecured claim against the estate will be satisfied. Assuming, without deciding, that GSS and Shoemaker would not succeed to L & R's claim, this would reduce the total unsecured claims asserted against the estate. Remember, though, that Daley's trustee has filed a "no-asset" report. If the trustee be correct that the estate has no assets, then reduction of the unsecured debt would have no effect upon the estate. The only possible source of estate assets available for distribution to creditors (which the trustee may or may not have considered) would be the residue of the Proceeds, if any there be. L & R, as the plaintiff, has the burden of showing that there is subject matter jurisdiction. From the record as it exists, it is impossible to tell whether there will be anything left from the Proceeds after the debtor's former

wife is paid. She is entitled to $120,750.00, plus an undetermined amount of interest. Although the Proceeds were in the original amount of $144,630.43, the record does not reveal whether they have been deposited at interest. Thus, I cannot tell whether anything would come into the estate, and if there were funds available, whether they would be sufficient to satisfy any administrative claims of the trustee and then yield something for creditors. *See 610 W. 142 Owners,* 219 B.R. at 371 (holding the breach of fiduciary duty and negligence claims to be "related to" the bankruptcy case because if plaintiffs were successful in their actions against the defendants, the outcome would affect property available for distribution to creditors); *In re Holland Industries, Inc.,* 103 B.R. 461, 468 (Bankr.S.D.N.Y.1989) (recognizing three situations where a civil proceeding involving non-debtors would be related to the bankruptcy: 1) to determine the secured or unsecured status of a creditor and thereby affect the ranking of claims; 2) to increase or diminish a debtor's liabilities; and 3) to affect the amount of property available for distribution to the estate's creditors); *In re North Star Contracting Corp.,* 146 B.R. 514, 520 (Bankr. S.D.N.Y.1992). Without the information to which I just alluded, I cannot determine whether or not "related to" jurisdiction exists. Ordinarily, this would mandate that I dismiss the claims because of the plaintiff's failure to establish subject matter jurisdiction. However, because L & R, GSS and Shoemaker, who are not familiar with these arcane issues of bankruptcy jurisdiction, plainly did not appreciate the complexity of the issues between them, I will allow them to supplement the record on the sole issue of whether the creditors conceivably will be affected by the claims asserted against GSS and Shoemaker. Should L & R establish jurisdiction, I will then determine whether or not to abstain.

### Conclusion

L & R is to submit any additional evidence no later than 10 days following the date of this decision. GSS and Shoemaker may respond within 10 days thereafter. In the event that L & R does not submit any additional evidence by the time allotted, because it will not have met its burden of proving jurisdiction, GSS or Shoemaker may settle an order dismissing for lack of subject matter jurisdiction the claims asserted against them. If L & R does timely supplement the record, it is to schedule a further hearing on this motion to allow the court to rule on the supplemented record. In any event, GSS and Shoemaker may immediately settle an order dismissing the fraudulent transfer claim for lack of standing. The request for sanctions is denied.