*465
 
 OPINION OF THE COURT
 

 Simons, J.
 

 Plaintiff LMWT Realty Corporation is the owner of two adjacent buildings on Manhattan Avenue in the City of New York. The buildings were extensively damaged in a 1990 fire and plaintiff submitted a claim to its insurer, defendant First Central Insurance Company, seeking indemnification for the loss. When the carrier disputed the claim, plaintiff retained the law firm of Jaroslawicz and Jaros on a one-third contingency basis to recover the fire insurance proceeds. The action was settled on the eve of trial for $130,000 but the insurer refused to issue the settlement check because the City of New York had previously served and filed certificates of lien for unpaid property taxes and other charges against the proceeds of the policy pursuant to General Municipal Law § 22.
 

 The attorneys do not dispute the City’s right to the bulk of the fire insurance proceeds under the statute; they contend, however, that the amount of the City’s recovery should be reduced by the amount of their charging lien. We agree with the attorneys that without their efforts, there would be no proceeds against which the City could enforce its special tax lien, because the City has no right of action against the insurer. Equitable considerations thus persuade us that the attorneys’ charging lien should be given priority. Accordingly, we affirm the order of the Appellate Division, which awarded them their attorneys’ fees and expenses.
 

 I
 

 General Municipal Law § 22 (2) authorizes tax districts to file claims for unpaid taxes and assessments against the proceeds of a policy of fire insurance insuring an owner of real property in the district. The claim constitutes a lien against the policy proceeds, which, the statute provides, "shall * * * be prior to all other liens and claims except the claim of a mortgagee of record named in such policy”. The mechanics for perfecting the lien are spelled out in section 331 of the Insurance Law.
 

 Soon after the statute was enacted, the City of New York filed a Notice of Intention to Claim Against Fire Insurance Proceeds with the State Superintendent of Insurance, as the Insurance Law provides, and adopted a resolution enabling the City’s tax enforcement officer to assert its claims for unpaid taxes against the proceeds of a fire insurance policy
 
 *466
 

 (see,
 
 Administrative Code of City of NY § 11-2801). Thus, when the City was notified by defendant insurer of plaintiff’s claim to insurance proceeds on June 5, 1990, it served the insurer’s adjuster with two certificates of special lien for unpaid taxes and other charges related to the fire-damaged properties, one in the amount of $81,415.43 against 240 Manhattan Avenue and the other in the amount of $43,906.94 against 246 Manhattan Avenue. Thereafter, the City issued amended certificates periodically while plaintiff’s litigation against defendant insurer was pending. By August 1992, shortly after the underlying claim was settled, the unpaid liens totalled $219,841.21.
 

 During this time, plaintiff retained Jaroslawicz and Jaros to pursue an action against the insurer. The agreement setting forth a contingent fee arrangement was signed and the action commenced on September 5, 1990. Just prior to jury selection, defendant made a settlement offer of $130,000, which was orally accepted by plaintiff and memorialized in a proposed stipulation of discontinuance and a release on June 2, 1992. After defendant insurer received these documents, it notified plaintiff’s attorneys that the City had previously served a timely certificate of lien against the proceeds of plaintiff’s fire insurance policy, and refused to issue the settlement check. Plaintiff’s attorneys also learned of the existence of separate, on-going litigation begun in March 1989 between plaintiff and the City regarding the imposition and amount of the tax liens.
 

 Plaintiff then moved for an order compelling defendant insurer to turn over, to its attorneys the amount of their fees and expenses, and to place the balance of the proceeds into an escrow account pending determination of the litigation between plaintiff and the City. The City had not been made a party to the action but it appeared on the return date of the motion and consented to jurisdiction. Supreme Court ultimately granted plaintiff’s motion and directed payment of the attorneys’ fees and disbursements, but ordered that the balance of the proceeds be paid to the City in partial satisfaction of its lien. The Appellate Division affirmed.
 

 II
 

 The City relies on the language of General Municipal Law § 22 (2), which states that the taxing district’s lien is "prior to all other liens and claims except the claim of a mortgagee of record named in [the fire insurance] policy.” By explicitly providing an exception for the mortgagee, the City contends,
 
 *467
 
 the Legislature manifested its intent to recognize no other exceptions to the City’s priority. Indeed, even if it be claimed that the language of the statute impliedly excepts the attorney’s lien by defining a lien in section 22 (1) (c) as a "charge imposed upon real property” — which an attorney’s lien is not —the attorneys’ fee still comes within the statutory language, for subdivision (2) makes it clear that once the City’s tax lien against the property is perfected it has priority over "all other liens and
 
 claims”
 
 against the proceeds (emphasis added). The attorney’s lien constitutes a claim against the proceeds, within the scope of the statute, and the statute provides that it is superseded by the claim of the taxing entity. Thus, the City asserts it is entitled to all the settlement proceeds.
 

 An attorney’s charging lien, however, has not historically been characterized in such a limited manner. Under the common law, the attorney was only entitled to a lien upon the judgment, but the scope of the charging lien was extended by statute to give the attorney a lien upon the client’s cause of action as well. The lien comes into existence, without notice or filing, upon commencement of the action or proceeding
 
 (see, Matter of Heinsheimer,
 
 214 NY 361, 367;
 
 Fischer-Hansen v Brooklyn Hgts. R. R. Co.,
 
 173 NY 492; Judiciary Law § 475). In
 
 Matter of City of New York (United States
 
 — Coblentz) (5 NY2d 300, 307-308,
 
 cert denied sub nom. United States v Coblentz,
 
 363 US 841), we stated that because a cause of action is a species of property, an attorney acquires a "vested property interest” in the cause of action at the signing of the retainer agreement and thus a "title to 'property and rights to property’ ”. Accordingly, the charging lien does not merely give an attorney an enforceable right against the property of another, it gives the attorney an equitable ownership interest in the client’s cause of action. The client’s property right in his own cause of action is only what remains after transfer to the attorney of the agreed-upon share upon the signing of the retainer agreement
 
 (Matter of City of New York, supra).
 
 Similarly, in
 
 People v Keeffe
 
 (50 NY2d 149, 156), we noted that with the signing of a retainer agreement that expressly assigns a portion of the proceeds of a cause of action to the attorney, the attorney "acquires * * * a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client.” Manifestly, then, an attorney’s charging lien is something more than a mere claim against either property or proceeds; an attorney’s charging lien "is a vested property right created by law and
 
 *468
 
 not a priority of payment”
 
 (Matter of City of New York, 5
 
 NY2d 300, 306,
 
 supra).
 

 The City asserts that under the common law a claim may nevertheless supersede an attorney’s lien if the claim is both prior in time and a charge against the specific fund upon which the attorney’s lien attaches, not merely a general indebtedness asserted against the client
 
 (see, Bacon v Schiesinger,
 
 171 App Div 503, 504-505 [stating the rule],
 
 affd without opn
 
 224 NY 690). Because the City served its certificates of lien on June 15, 1990, and the attorney’s lien did not vest until September 5, 1990, when the retainer agreement was signed, the City has chronological priority and because its lien is specifically against the proceeds of the fire insurance policy, the City maintains, it is entitled to assert that priority.
 

 However, there is an additional equitable factor which is dispositive here: the attorney’s services created the fund at issue, and under those circumstances the attorney’s charging lien must be given effect, even though a prior lien against the specific fund exists. Neither in
 
 Bacon v Schiesinger,
 
 nor in the handful of cases invoking the rule it stated, was the disputed fund created through the litigation giving rise to the attorney’s lien
 
 (see, e.g., Effective Communications W. v Board of Coop. Educ. Servs.,
 
 84 AD2d 941).
 

 Our reasoning was foreshadowed in
 
 Matter of Herlihy (State Tax Commn.)
 
 (274 App Div 342). In that case, the Federal Government had perfected liens for unpaid income taxes against all "property and rights to property” belonging to the plaintiff
 
 (id.,
 
 at 344). When the plaintiff subsequently recovered a sizable settlement as a result of a number of actions brought by his attorney against the plaintiff’s insurance carriers, the Government asserted its right to the entire proceeds of the settlement. In according the attorney’s lien priority, the court ruled that the Government’s liens attached only to the extent of the plaintiff’s right to the proceeds, and that right had been diminished to the extent of the attorney’s charging lien. The rule stated in
 
 Bacon v Schiesinger
 
 was not at issue in
 
 Herlihy
 
 because the Government’s tax liens were general in nature; however, the Court specifically noted that because the attorney’s services were "indispensably instrumental” in producing the funds upon which the tax liens attached, it would be in any event inequitable to apply the entire proceeds to the tax payment, particularly since the Government had acquiesced in the litigation and knew — as did the City here — that
 
 *469
 
 an attorney’s services were necessary to procure the plaintiffs recovery from his insurers
 
 (id.,
 
 at 346-347).
 

 This result furthers the legislative intent of General Municipal Law § 22. Although the immediate impetus for the statutory enactment was to discourage the owners of dilapidated and tax-delinquent buildings from the increasingly prevalent practice of burning the buildings and pocketing the insurance proceeds, leaving the taxing district with unpaid taxes and only a value-depleted property upon which to foreclose, the statute has in fact a two-fold purpose — to provide for "direct, accelerated and nondiscounted payment” of the fire insurance proceeds to the municipal lienholder, as well as to prevent arson fraud
 
 (see, Insurance Co. v City of New York,
 
 71 NY2d 983, 985; Letter of Assemblyman G. Oliver Koppell [initial Assembly cosponsor] to Governor, dated July 28, 1977, Bill Jacket, L 1977, ch 738; Mem of Secretary of State to Governor’s Counsel,
 
 id.).
 

 The City has, at best, only a potential and inchoate right to the fire insurance proceeds which can never — in the absence of any statutory authorization for a taxing entity to bring its own suit against the insurer — ripen into recovery in cases such as this, where the carrier refuses to make payment under the policy and does so eventually only because the insured has brought suit. To allow the City to recover the entire fund created by the attorney’s efforts would be inequitable. The charging lien was created by the common-law courts as a device to protect an attorney by "disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained”
 
 (see, Goodrich v McDonald,
 
 112 NY 157, 163;
 
 see also, Matter of Heinsheimer,
 
 214 NY 361, 365,
 
 supra).
 
 Although the City is not, of course, the client of the firm of Jaroslawicz and Jaros, the same equitable principle applies.
 

 Finally, the City contends that any inequity can be avoided if an attorney, prior to accepting an insured’s claim against its insurer, rationally evaluates whether the plaintiff is reasonably likely to recover a sum sufficient to satisfy the tax obligation and to pay the attorney’s fee as well. Given the crowded civil dockets of the courts and the often protracted nature of litigation, it is, in practical terms, virtually impossible for an attorney to predict with any degree of certainty the size to which the tax lien, with attendant penalties and interest, may have burgeoned by the time the proceeds of the
 
 *470
 
 policy are actually in hand. The end result of the position urged by the City would be frustration, not furtherance, of the legislative purpose of General Municipal Law §22. Understandably, few, if any, attorneys would be willing to pursue the fire insurance claims of tax-delinquent insureds on a contingency basis. Because the deteriorating buildings that are most often the objects of liens imposed pursuant to General Municipal Law § 22 are also often owned by shell corporations with no other assets, the City would in the end be unable to recover a meaningful portion of its outstanding taxes.
 

 We conclude the purpose of the statute and the considerations of equity are both best served by according priority to an attorney’s charging lien when the attorney’s efforts have produced a fund subject to a taxing entity’s special lien imposed on fire insurance proceeds pursuant to General Municipal Law § 22.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.