[657 NYS2d 175]

SALLY DALEY, Appellant, v WILLIAM S. DALEY, Respondent.

First Department, May 13, 1997

APPEARANCES OF COUNSEL

*Florence M. Fass* for appellant.

*Paul T. Shoemaker* of counsel *(Greenfield Stein & Senior, L. L. P.,* attorneys), for respondent.

## OPINION OF THE COURT

MILONAS, J. P.

The issue presented to us on this appeal is whether the attorneys' charging liens as to the proceeds of the defendant husband's recovery in an action against his former employer take precedence over the lien as to the same proceeds expressly given to the plaintiff wife pursuant to the parties' settlement agreement and divorce judgment, where the same attorneys represented defendant at various times in both actions.

At the outset, it is necessary to our analysis to set forth an account of defendant's legal representation in both the employment litigation and the divorce action. After seven years' employment, defendant was discharged by his employer, The Related Companies, Inc., in 1990. He engaged the services of and signed a retainer agreement with the law firm of Liddle, O'Connor, Finkelstein & Robinson, and thereafter commenced an action for compensation allegedly due him (hereinafter the *Related* action). That retainer agreement provided for compensation on an hourly fee basis and a percentage of any recovery in excess of $900,000. Paul T. Shoemaker, Esq., a member of the Liddle firm, represented defendant in the *Related* litigation from inception to conclusion, even after leaving the firm in late 1994.

In April 1993, after 12 years of marriage, plaintiff initiated divorce proceedings, and, by order to show cause, moved for pendente lite relief for maintenance, child support and interim counsel fees. She specifically asked that the IAS Court restrain defendant from transferring or otherwise dissipating "any proceeds" from the *Related* action then pending and direct that such proceeds be placed in an escrow account. By order dated May 3, 1993, the court (David B. Saxe, J.), declined to do the latter, but did restrain the transfer or disposition by defendant or his attorneys of any assets, "except in the ordinary course of business." By its terms, the order was to be served by May 10th on the Liddle firm, as defendant's counsel in the *Related* action. Plaintiff's attorney was thereafter apprised by the Liddle firm that it would represent defendant in the divorce action as well.

In fact, on May 14, 1993, defendant entered into a retainer agreement with the Liddle firm with respect to the matrimonial action; the first provision of that agreement, included in the record before us, concerned counsel fees in the *Related* action, and set forth defendant's promise to use the proceeds of any judgment in the *Related* action to pay the outstanding balance in that litigation (then approximately $102,000) plus an advance ($48,000) for "ongoing services" in that action. The agreement further provided that out of the "same fund" he would pay a $20,000 initial retainer to the firm for services in connection with the matrimonial action. Thus, the retainer agreement signed after service of the court order effectively disposed of $170,000 of the prospective proceeds of the *Related* action—the very proceeds plaintiff had sought to protect by court order.

Then, only two weeks after this agreement was signed, judgment was entered on an award of partial summary judgment to defendant in the *Related* action, in the amount of $307,435, and defendant made good on the promises set forth above: out of that award, he paid the Liddle firm approximately $150,000 for *Related* legal fees and the $20,000 retainer for the matrimonial action.

According to plaintiff, none of this was known to her or the court until receipt of defendant's answer to the pendente lite motion in July 1993. In his affidavit, defendant stated he had received the award and accounted for his depletion thereof (after paying the Liddle firm, defendant used the remainder to pay taxes and other debts and for living expenses). In the subsequent pendente lite order of August 27, 1993 (Jacqueline W. Silbermann, J.), awarding plaintiff maintenance, child support and counsel fees already expended, the court took note of defendant's depletion of the award and restrained and enjoined him from transferring or otherwise disposing of future proceeds from the *Related* action "except in the ordinary course of business and for ordinary and routine living expenses, in order to maintain the status quo for possible equitable distribution upon the plenary trial of this action." In granting this part of plaintiff's motion, the court also noted its July order that, in light of defendant's actions with respect to the first *Related* proceeds, future proceeds were to be held in escrow by the Liddle firm "without prejudice" to the firm's making application for counsel fees and disbursements in the divorce action.

Thereafter, by letter to plaintiff's attorney in November 1993, Paul Shoemaker informed plaintiff's counsel that, to

date, defendant had paid the Liddle firm a total of $192,838.06 in connection with the *Related* litigation.

In March 1994, Walter F. Bottger, Esq., assumed representation of defendant in the matrimonial action and continued in that capacity until entry of the divorce judgment in September 1994. The parties entered into a settlement agreement in June 1994, by which time defendant was $60,000 in arrears on his obligations under the pendente lite order. Article III of the agreement, which was incorporated but not merged into the September divorce judgment, states that "in lieu of any further distribution of property, real or personal" and "in satisfaction of" support arrears under the August 1993 pendente lite order, plaintiff "shall receive" from defendant $121,750, a sum representing arrears as well as plaintiff's equitable distribution share of the $307,435 award. In calculating her share—$73,500—of that award, legal fees for defendant's attorneys were deducted from the total amount. In addition, in reaching this agreement and settling on the amount specified, plaintiff waived $12,500 in arrears as well as any future interest in proceeds of the *Related* action.

The settlement agreement provided that the amount be paid in specified installments, and paragraph "D" reads as follows: "Notwithstanding the above, in the event that the Husband settles the pending litigation with The Related Companies in Supreme Court, New York County (Index No. 1979-90) or the action is otherwise terminated in the Husband's favor then any unpaid balance due the Wife hereunder shall be paid in full within five (5) business days of said settlement or termination, and *the Husband agrees that the judgment of divorce incorporating the terms of this agreement shall constitute a lien on any proceeds of settlement or other proceeds as to which he is entitled and the Wife shall be paid any balance due her prior to the disbursement of the funds to any other third party."* (Emphasis added.)

By letter dated August 30, 1994, plaintiff's attorney informed Paul Shoemaker by letter of the settlement agreement and plaintiff's lien in the amount of $121,750 against any proceeds in the *Related* action; enclosed with the letter was a copy of article III of the settlement agreement. The judgment of divorce included the same language concerning plaintiff's "lien on any proceeds of [the *Related*] settlement" and provided that plaintiff "shall be paid any balance due her under the parties' Agreement and this judgment prior to the disbursement to any third party of said settlement proceeds and/or other proceeds."

Thereafter, in May 1995, in connection with the *Related* litigation, defendant entered into a retainer agreement with the firm of which Paul Shoemaker was now a member, Greenfield, Stein & Senior, and with Walter F. Bottger, Esq., who, as previously noted, had assumed defendant's representation in the divorce action from the Liddle firm; Bottger served as co-counsel in the *Related* litigation through trial. By a single, handwritten agreement, this retainer set forth an hourly fee and a percentage of the prospective recovery (six per cent for the Greenfield firm and two per cent for Bottger), providing that "payment of fees based on hourly rates shall be deferred until recovery or such time as Daley is able to pay them."

In November 1995, following trial, defendant was awarded $144,630.43 in the *Related* action. This amount represented the sum his employers had acknowledged at trial was due him; the trial court rejected defendant's claims in their entirety, which totalled approximately $8 million.

Plaintiff immediately sought to restrain the transfer of these proceeds to defendant and enforce her lien. Paul Shoemaker informed plaintiff's counsel by fax that he would oppose the motion and that his present firm (Greenfield), prior firm (Liddle) and co-counsel Walter Bottger had asserted charging liens as against the entire award. As might be imagined, counsel fees for the protracted, unsuccessful litigation far exceeded the recovery.

After submission of legal memoranda, the IAS Court denied plaintiff's motion, citing *LMWT Realty Corp. v Davis Agency* (85 NY2d 462), and concluding that, because "the fund in question was created due to the attorney's services" and that "but for the services rendered by the attorneys in the action, there would be no fund in question," the charging liens were superior to plaintiff's lien. We reverse and grant plaintiff's motion, finding it patently inequitable under the particular circumstances presented to permit the attorneys in question to divest plaintiff of her entitlement to these specific funds.

In *LMWT Realty Corp. v Davis Agency* (85 NY2d 462, *supra*), the owner of properties damaged by fire retained a law firm on a contingency basis to obtain payment under a fire insurance policy on a claim refused by the insurer. Prior to the parties' settlement, the City of New York served and filed with the insurer certificates of liens for unpaid property taxes and other assessments as against the policy proceeds, as provided by General Municipal Law § 22. Upon settlement, the City claimed the full amount of the recovery under the statute; the attorneys

claimed that the City's recovery was limited to the balance after the attorneys' charging lien was satisfied. The City argued that its liens had priority because they pre-existed the attorneys' lien and, by statute, attached to the very policy proceeds at issue.

The Court of Appeals concluded that "considerations of equity" favored the attorneys and therefore the charging lien took precedence *(supra,* at 470). Referring to the history of the charging lien, the Court noted that while under common law the attorney's lien was on the ultimate judgment, by statute (Judiciary Law § 475), the lien comes into existence with the commencement of the cause of action. In this sense, it is a " 'vested property right created by law and not a priority of payment' " (85 NY2d, *supra,* at 467-468, quoting *Matter of City of New York [United States—Coblentz],* 5 NY2d 300, 306, *cert denied sub nom. United States v Coblentz,* 363 US 841). As the Court had noted previously, in *People v Keeffe* (50 NY2d 149), this is all the more true when the retainer agreement "expressly assigns a portion of the proceeds of a cause of action" to the attorney (85 NY2d 462, 467, *supra).*

According to the *LMWT* Court, however, the "dispositive" *equitable* factor was that "the attorney's services created the fund at issue, and under those circumstances the attorney's charging lien must be given effect, even though a prior lien against the specific fund exists" (85 NY2d 462, 468, *supra).* In determining that this was the appropriate resolution, the Court observed that the "charging lien was created by the common-law courts as a device to protect an attorney by 'disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained' [citations omitted]" (85 NY2d 462, 469, *supra).*

Given the particular circumstances of the matter before us, we do not read *LMWT* to compel a similar result here. Plaintiff was explicitly given a lien in a certain amount on the proceeds of any recovery in the *Related* action, which lien was to be paid prior to the disbursement of said funds to "any other third party." We can think of no other words that would go farther to assure plaintiff that *no one* stood in a better position than she in terms of the distribution of any award. Yet it is not this promise that establishes plaintiff's superior interest, for an attorney's charging lien cannot be superseded merely by some contractual agreement to otherwise dispose of the proceeds of a settlement. Rather, it is the role defendant's attorneys played in the course of both actions—serving both suc-

cessively and concurrently to one another—that tips the scale in plaintiff's favor.

The same firm that commenced the *Related* action became counsel in the matrimonial action when plaintiff initiated divorce proceedings. Defendant's representation in the divorce action was later assumed by Walter Bottger, who, within months, became co-counsel in the *Related* action. The same individual attorney, Paul Shoemaker, saw the *Related* action through from start to finish, notwithstanding his change in firms during the pendency of that action. Plaintiff's divorce attorney all the while maintained contact with Shoemaker as counsel in the *Related* action, given the significance of that prospective award (according to defendant, it represented the "bulk of the marital assets").

In these circumstances, we cannot read *LMWT* to mean that, notwithstanding the express promise to plaintiff that she would be paid before "any other third party," there was all the while someone whose interest superseded hers—and that that "someone" was none other than defendant's own counsel. No charging lien asserted here can take priority over plaintiff's lien where the attorneys asserting the liens either signed, negotiated or were fully aware of the settlement that included the express provision as to the disposition of the first $121,750 of any *Related* award to plaintiff before *any other third party* (*see, Marsano v State Bank*, 27 AD2d 411, 413, *appeal dismissed* 23 NY2d 1018).

It is the peculiar confluence of events and participants that, in our view, requires resolution in favor of plaintiff. Had defendant contracted away his interest in the *Related* action to some other party without counsel's knowledge or participation, the result might well be different. These particular attorneys, however, who participated in various stages of two separate litigations involving their client, cannot (because of a disappointing result in one) suddenly spring upon plaintiff their claim of a superior right—by statute—to the monies expressly promised to her in documents negotiated by them or of which they had full knowledge.

Finally, with respect to the "dispositive" equitable factor in *LMWT*, relied on by defendant and the IAS Court, that the funds at issue existed only due to the efforts of the attorneys, we note that this is not precisely the case here. In a lengthy opinion, in which it reviewed defendant's various allegations concerning the terms of his employment, the *Related* trial court flatly rejected defendant's claims in their entirety, find-

ing him to be an incredible witness. The only recovery realized by defendant was to the extent that his employer, by motion or at trial, conceded such monies were due him; this is true both as to the $307,435 and $144,630.43. On February 27, 1997, this Court affirmed the trial court's judgment in that case (*Daley v Related Cos.*, 236 AD2d —, 1997 NY Slip Op 01844). While no attorney can foresee or ensure a particular result, and the litigation here may well have induced the concessions made by the employer, the outcome of that matter and the trial court's decision in that regard are not irrelevant to our considerations of the respective equities in the instant matter.

Accordingly, the order of the Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered January 18, 1996, denying plaintiff's motion to place in escrow the proceeds awarded defendant in another action and disburse those funds in accordance with the parties' 1994 divorce judgment, should be reversed, on the law and the facts, with costs, and the motion granted.

NARDELLI, WILLIAMS and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 18, 1996, reversed, on the law and the facts, with costs and disbursements, and the plaintiff's motion granted.