In re William Stewart DALEY, Debtor.

**GREENFIELD, STEIN & SENIOR, LLP, Plaintiff,**

v.

**William Stewart DALEY, Defendant.**

**Bankruptcy No. 97 B 47862(TLB). Adversary No. 98/8190A.**

United States Bankruptcy Court, S.D. New York.

June 11, 1998.

Greenfield, Stein & Senior L.L.P., New York City, by Paul T. Shoemaker, for Plaintiff.

Marilyn Simon & Associates, New York City, by Robert D. Raicht, for Defendant.

## DECISION GRANTING MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

TINA L. BROZMAN, Chief Judge.

The debtor in this chapter 7 case moves to dismiss an adversary proceeding commenced by a law firm seeking a declaration that it is subrogated to the asserted nondischargeable claim of the debtor's former wife. At issue is whether an attorney whose charging lien was set aside in favor of the lien of the debtor's former spouse is subrogated to the former spouse's claim against the debtor where her claim was or will be satisfied from the proceeds of an action which the attorney commenced for the debtor.

The facts are drawn from the allegations in the complaint, the documents referred to therein and the decision of the Appellate Division, First Department, in *Daley v. Daley*, 230 A.D.2d 182, 657 N.Y.S.2d 175 (1st Dep't 1997), in which both parties in this adversary proceeding were litigants and to which both parties refer in their papers.[1]

### I.

William Stewart Daley, the debtor, was engaged in two litigations prior to his bankruptcy, the first a matrimonial action instituted by Sally Peters, his now former spouse, and the second, an employment suit which he commenced against his former employer. Daley was represented in both actions by an attorney named Paul Shoemaker. Shoemaker was a member of Liddle, O'Connor, Finkelstein & Robinson (the "Liddle firm") until he departed to join Greenfield, Stein & Senior, LLP ("GSS"), the plaintiff in this adversary proceeding. Shoemaker represented

Daley throughout the entirety of the employment litigation, even after his departure from the Liddle firm. However, in the matrimonial action, Shoemaker represented Daley until only March 1994, before he joined GSS.

His employer conceding that he was owed certain monies, Daley obtained partial summary judgment in the employment action, receiving $307,435, approximately $150,000 of which he paid the Liddle firm for fees related to that action. In addition, Daley gave the firm a $20,000 retainer for the matrimonial action. Presumably to conserve marital assets for equitable distribution, the matrimonial court several months later ordered that any future awards to Daley be held in escrow by the Liddle firm.

Before the employment action was fully resolved, Daley and Peters reached a settlement in the matrimonial action (later incorporated but not merged into the judgment of divorce) which, so far as pertinent to Daley's dispute in this adversary proceeding with GSS, provided that Daley would pay Peters $121,750 plus interest (the "Marital Claim") from any recovery in the employment action, secured by a lien which was to be paid "prior to any other third party." The quoted language is significant, for when it was agreed to Shoemaker was representing Daley in both actions and thus was aware of its inclusion in the settlement document.

The employment action proceeded to trial on the claims as to which summary judgment had not been granted. Daley sought to recover $8 million; his employer conceded that Daley was owed $144,630.43, which the trial court awarded to him (the "Proceeds"). Other than what the employer conceded, Daley received nothing, for the court found him an incredible witness and completely rejected his claims. Moving to enforce her lien against the Proceeds, Peters was met with opposition by Shoemaker, now a partner of GSS, who asserted a charging lien on the

---

**1.** On a motion pursuant to Fed.R.Civ.P. 12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012, the court's consideration is limited to the factual allegations in the complaint, to documents attached to the complaint as exhibits, or incorporated in it by reference, to matters of which judicial notice may be taken, or

to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *see* 2 MOORE'S FEDERAL PRACTICE 3D, § 12.34[2] at 12–66 (3d ed.1997).

entire amount of the award, as did all the law firms which had represented Daley in either action.[2] Faced with that opposition, Peters requested the matrimonial court to order the Proceeds placed into escrow. Her motion was denied; notwithstanding provisions of both the settlement agreement and the divorce judgment granting Peters a lien on the Proceeds superior to that of any other third party, the court determined that the charging lien "primed" Peters' and authorized the release of the Proceeds to GSS. The Appellate Division reversed, declaring superior to Shoemaker's Peters' right to the Proceeds. That determination is now final.[3]

Several months ago, Peters sought relief from the automatic stay imposed by Daley's bankruptcy to satisfy her marital claim from the Proceeds, relief which I granted. Between the time that that motion was filed and determined, GSS instituted this adversary proceeding.

### II.

Daley urges that GSS' complaint must be dismissed under Fed.R.Civ .P. 12(b)(6) for failure to state a claim. He asserts that GSS cannot seek a determination of the dischargeability of Peters' claim because GSS cannot be subrogated to that claim under § 509 of the Bankruptcy Code. The reasons which he advances are two: (i) the funds from which Peters was or will be paid are not GSS' but the debtor's and (ii) GSS is not a co-debtor of Daley's to Peters nor has it secured the debt which Daley owes her.

GSS counters that its priming lien was subordinated by the Appellate Division such that Peters was or will be paid out of GSS' property and that GSS therefore "secured" Peters' claim against Daley as a result of which subrogation flows.

### III.

■ A motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6) may be granted only where it appears beyond a rea-

sonable doubt that no set of facts could be proven at trial which would entitle a plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Whereas all factual allegations contained in the complaint are to be taken as true, *see Festa v. Local 3, Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990), courts are free to disregard legal conclusions, deductions or opinions couched as factual allegations. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 311–18 (2d ed. 1990); 2A MOORE'S FEDERAL PRACTICE 3D, § 12.07[2–5] at 12–84 to 12–85 (3d ed. 1997). Thus, the allegations of the complaint that if GSS pays Peters it will be subrogated to her claim and will be entitled to seek recovery over against Daley need not be accepted as true. So we turn to whether, if the remaining allegations of the complaint be accepted as true, GSS is indeed entitled to subrogation to Peters' allegedly nondischargeable claim.

Section 509(a) of the Bankruptcy Code provides that "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U .S.C. § 509(a). Subrogation is an equitable remedy which permits one who pays another's debt to stand in the shoes of the latter party and assert whatever rights that party held. *See Aetna Casualty & Surety Company v. Clerk, U.S. Bankruptcy Court, New York, N.Y. (In re Chateaugay Corporation)*, 89 F.3d 942, 947 (2d Cir.1996) (*citing American Surety Co. v. Bethlehem Nat'l Bank*, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941)); *see also In re Topgallant Lines, Inc.*, 154 B.R. 368, 381 (S.D.Ga.1993), *aff'd sub nom., McAllister Towing v. Ambassador*, 20 F.3d 1175 (11th Cir.1994), *reh'g denied*, 49 F.3d 734 (11th Cir.1995).

■ "An essential prerequisite to the right of equitable subrogation is that the person

---

**2.** The internecine dispute among the law firms is the subject of a separate adversary proceeding.

**3.** Whether the funds have actually been turned over to Peters is unclear; it matters little, however, to the disposition of this motion which hinges on whether GSS is entitled to subrogation if Peters is paid.

seeking subrogation must have made a payment of another's obligation." *Pandora Industries, Inc. v. Paramount Communications Inc. (In re Wingspread Corporation),* 145 B.R. 784, 789 (S.D.N.Y.1992), *aff'd mem.,* 992 F.2d 319 (2d Cir.1993). And that payment must fully satisfy the debt owed the creditor. *See Aetna Casualty & Surety Company v. LTV Steel Company, Inc. (In re Chateaugay Corporation),* 94 F.3d 772, 779 (2d Cir.1996).

It is in this requirement of payment that Daley and GSS have their first disagreement, Daley arguing that the payment of Peters out of the Proceeds comes not from GSS' property, but from his own. GSS responds that payment is to be construed expansively, with the court "look[ing] through the form to the substance [and determining] the true nature of the transaction in question." *In re Wingspread Corporation,* 145 B.R. at 788; *see In re Chateaugay Corporation,* 89 F.3d at 948 (holding that Aetna's promise to make future payments is sufficient to constitute payment under § 509(a) since its promise effectively discharged the debt) (*citing Feldhahn v. Feldhahn,* 929 F.2d 1351, 1354 (8th Cir.1991) (holding that payment in the technical sense is not required, so long as surety discharged its obligation)). Payment presupposes the co-existence of at least three indispensable elements: 1) a delivery of the subject matter by the debtor; 2) an acceptance thereof by the creditor; and 3) an immediate change of ownership of the medium of payment. *See* 82 N.Y.Jur.2d 362, Payment and Tender § 1 (1997). Thus, GSS cannot make payment if it is not the owner of the Proceeds.

Under the plain language of the Bankruptcy Code, an entity is subrogated to the rights of a creditor if it: (1) "is liable with the debtor on" (or has secured); (2) "a claim of a creditor against the debtor;" and (3) "pays such claim." The word "liable" means "[b]ound or obliged in law or equity." The word "with" means "in addition to." Consequently, looking to the plain language of the statute and giving effect to its meaning, "an entity ... is liable with the debtor," when the entity is bound or obliged in law or equity in addition to the

debtor on "a claim of a creditor against the debtor."

*CCF, Inc. v. First National Bank & Trust Company of Okmulgee (In re Slamans),* 69 F.3d 468, 473 (10th Cir.1995) (all citations omitted). "Liable with" means that "the parties are liable to the same creditor at the same time on the same debt." *See In re Topgallant,* 154 B.R. at 381, fn. 12. That is certainly not the case here and, indeed, GSS does not argue that it is liable with the debtor but that it has secured Peters' claim against Daley. For if the potential subrogee is not liable with the debtor on the same claim of a creditor, it nonetheless may be subrogated on the alternative ground that, out of its own property, it has secured the claim of that creditor. *See* 4 L. KING, COLLIER ON BANKRUPTCY, ¶ 509.02[2] at 509–4 (15th ed. 1998). " 'Secured' refers to the granting of a security interest in an asset." *See In re Topgallant,* 154 B.R. at 381, fn. 13 (*citing In re Valley Vue Joint Venture,* 123 B.R. 199 (Bankr.E.D.Va.1991)).

To successfully argue that it secured and paid Daley's debt to Peters, GSS must establish that it utilized its own property to do so or subrogation is unavailable and this dischargeability action cannot lie. In other words, if the Proceeds belonged to Daley, rather than GSS, the motion to dismiss must be granted.

GSS' claim to ownership of the Proceeds hinges upon the rights conferred by the charging lien. GSS argues that the New York Court of Appeals' decision in *LMWT Realty Corp. v. Davis Agency, Inc.,* 85 N.Y.2d 462, 649 N.E.2d 1183, 626 N.Y.S.2d 39 (1995) compels the conclusion that GSS had an ownership interest in the Proceeds. And, at first blush, there is an appeal to this argument. Under New York law, a charging lien comes into existence upon the commencement of an action. *See LMWT Realty Corp.* 85 N.Y.2d at 467, 626 N.Y.S.2d 39, 649 N.E.2d 1183. It "does not merely give an attorney an enforceable right against the property of another, it gives the attorney an equitable ownership interest in the client's cause of action." *Id.* A charging lien is more than a claim of priority of payment against proceeds owned by another; it is "a vested

property right created by law." *Id.* (*quoting Matter of City of New York (United States– Coblentz)*, 5 N.Y.2d 300, 306, 157 N.E.2d 587, 184 N.Y.S.2d 585, *cert. denied sub nom. United States v. Coblentz*, 363 U.S. 841, 80 S.Ct. 1606, 4 L.Ed.2d 1726). In *LMWT Realty*, the New York Court of Appeals stressed that where an attorney's services create the fund over which he or she asserts a charging lien, that interest must be given effect despite the existence of a prior lien against the same proceeds. *See LMWT Realty*, 85 N.Y.2d at 468, 626 N.Y.S.2d 39, 649 N.E.2d 1183. Thus, under *LMWT Realty*, GSS had a vested property right or "an equitable ownership interest" in the claims asserted by Daley in the employment action. This is not to say, however, that GSS owned the Proceeds, for the Appellate Division has ruled otherwise.

In *Daley v. Daley* the Supreme Court was asked to resolve the priority battle between GSS' charging lien and Peters' Marital Claim, which represented a lien created by the settlement agreement and divorce judgment against the Proceeds. That court ruled in favor of GSS, giving its charging lien effect over the Proceeds and authorizing the release of those Proceeds to GSS. The First Department reversed the lower court "finding it patently inequitable under the particular circumstances presented to permit the attorneys in question to divest plaintiff of her entitlement to these specific funds." *Daley v. Daley*, 230 A.D.2d 182, 186, 657 N.Y.S.2d 175, 178 (1st Dep't 1997). The Appellate Division addressed *LMWT Realty*, noting that "the 'dispositive' equitable factor" there was that the attorney's services created the fund at issue. *Id.* at 187, 657 N.Y.S.2d at 178. In such circumstances, the Appellate Division recognized that a charging lien does vest the attorney with a property interest in the cause of action because "the 'charging lien was created by the common-law courts as a device to protect an attorney by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained' ", but it concluded that on these particular facts *LMWT Realty* did not compel giving GSS priority over the Proceeds. *Id.* at 187, 657 N.Y.S.2d at 178 (*quoting LMWT Realty*, 85

N.Y.2d at 469, 626 N.Y.S.2d 39, 649 N.E.2d 1183).

Pursuant to a settlement between Daley and Peters in which Shoemaker represented Daley, Peters was granted a lien on the Proceeds which was to be paid prior to "any other third party." The Appellate Division explained, "[w]e can think of no other words that would go farther to assure plaintiff that no one stood in a better position than she in terms of the distribution of any award." *Id.* Although, the Appellate Division reasoned, a contractual agreement between Daley and Peters could not alone serve to supersede his attorney's charging lien, given Shoemaker's and the Liddle Firm's involvement in both actions, "[n]o charging lien asserted here can take priority over plaintiff's lien where the attorneys asserting the liens either signed, negotiated or were fully aware of the settlement that included the express provision as to the disposition of the first $121,750 of any Related [Daley's employer] award to plaintiff before any other third party." *Id.* at 188, 657 N.Y.S.2d at 179. Put a little differently, the Appellate Division concluded that whereas a client cannot contract away his attorney's charging lien where the attorney is unaware of the contract or does not concur in it, the result differs where the attorney represents the client when the contract eviscerating the charging lien is executed. As the court stated,

> [h]ad [Daley] contracted away his interest in the Related action to some other party without counsel's knowledge or participation, the result might well be different. These particular attorneys, however, who participated in various stages of two separate litigations involving their client, cannot (because of a disappointing result in one) suddenly spring upon plaintiff their claim of a superior right—by statute– to the monies expressly promised to her in documents negotiated by them or of which they had full knowledge.

*Id.* at 188, 657 N.Y.S.2d at 179. Moreover, the Appellate Division found that Daley's recovery was not realized by the efforts of his attorneys, but by the concessions of his employer of the amounts due him with respect to both awards even though the litiga-

tion may have induced the concessions. *Id.* at 189, 657 N.Y.S.2d at 179. Accordingly, the "dispositive" equitable factor in *LMWT Realty* did not exist for Shoemaker and his law firms.

What is clear from the Appellate Division's decision, which is final and non-appealable, is that GSS, by its conduct vis-à-vis the settlement with Peters, relinquished its right to an equitable ownership interest in the Proceeds. GSS' vested property interest in Daley's cause of action was an inchoate right to whatever recovery that action would yield. That right would have become a specific property interest when a recovery, such as the Proceeds, were realized. However, in this case, Shoemaker, when he negotiated or acquiesced to Daley's entry into the settlement agreement with Peters granting her an unfettered right to the Proceeds, effectively waived the right or potential to make choate his or his firm's property interest in the Proceeds in favor of Peters. Thus, so much of the Proceeds as were or will be utilized to pay Peters did not belong to GSS.[4] Under these circumstances it cannot be said that GSS either paid Peters out of its own property or that it secured Peters. Thus, GSS cannot be subrogated to the rights of Peters and has no right to bring the underlying dischargeability action based on Peters' status.

Accordingly, Daley's motion to dismiss is granted. SETTLE ORDER consistent with this decision.

---

**4.** I make no finding as to the nature or continued vitality, if any, of GSS' lien against the remainder of the Proceeds should there be such a residue.