**In re Lawrence Anthony JOSEPH, Debtor.**

No. 04–20728.

United States Bankruptcy Court, D. Connecticut.

Aug. 31, 2005.

Gerald E. Ross, Freyer & Ross LLP, New York City, Pro se Movant.

Scott L. Lanin, c/o James F. Sullivan, Howard, Cohn, Sprague & FitzGerald, Hartford, CT, Counsel for Objectors Marguerite Reeves and Michael Ambler.

Thomas A. Arena, Esq., c/o Evan S. Goldstein, Reid and Riege, P.C., Hartford, CT, Eric A. Henzy, Reid and Riege, P.C., Hartford, CT, Counsel for Milbank, Tweed, Hadley & McCloy LLP.

John J. O'Neil, Hartford, CT, Chapter 7 Trustee.

### RULING FIXING AMOUNT OF ATTORNEY'S CHARGING LIEN

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

### INTRODUCTION

Fryer & Ross LLP [1] ("Ross"), holder of an asserted attorney's charging lien against the proceeds of a prepetition judg-

---

1. For purposes of this ruling, the court does not distinguish between Gerald E. Ross, Esq. and his firm, Fryer & Ross LLP.

ment in favor of the debtor, presently on appeal, filed a motion ("the Ross motion") seeking, inter alia [2], to fix the amount of his senior charging lien ("the Ross lien") and for a declaration that he is entitled to credit-bid up to such amount at the trustee's proposed sale of the judgment. The following background was culled primarily from the undisputed factual allegations asserted in the parties' motions, memoranda and affidavits filed with the bankruptcy court.

## II.

### BACKGROUND

Lawrence Anthony Joseph ("the debtor") was, from 1986 to 1993, a partner in Millbank, Tweed, Hadley & McCloy LLP ("Millbank"), a New York law firm. The debtor's "differences with his partners led to his resignation from the firm in October 1993." (Ross 6/16/2005 Decl. ¶ 4.) In April 1997, Millbank commenced an arbitration proceeding against the debtor ("the Millbank claim"), alleging that his promissory notes to Millbank exceeded the value of his partnership interest. Represented by Ross, the debtor "asserted defenses and counterclaims, notably a counterclaim that he had been forced out of the firm in breach of the partnership agreement" and was therefore entitled to a larger distribution upon termination than would otherwise apply. (Id. ¶ 5.) "A series of arbitration awards were rendered from October 1998 through February 2003," resulting in a net award to the debtor. (Id. ¶ 6–8.) The arbitrator's February 2003 opinion increased the net award in the debtor's favor "from $475,000 to something over $4 mil-

lion," by including compound interest at 16.1% per year on the debtor's partnership interest. (Id. ¶ 8.)

The parties then moved the litigation to the courts, [the debtor] petitioning to have the award confirmed and Millbank to have it set aside. The Court affirmed the basic awards to both parties, but agreed with Millbank that under the circumstances of this case, the arbitrator did not have the power under New York Law to award interest to [the debtor]. Accordingly, offsetting judgments were rendered. The result, as of the date [the debtor] filed his petition in bankruptcy is a net of approximately $519,000 in favor of [the debtor]. The judgment in favor of [the debtor] has been appealed by both parties and those appeals [remain pending] because of the automatic stay that became effective when [the debtor] filed his petition for bankruptcy relief.

(Id. ¶ 9.)

The trustee initially filed a motion to approve settlement of the Millbank claim for $475,000, on condition the estate retain a consented-to carve-out of $50,000 from the Ross lien. The trustee thereafter withdrew his motion to approve the settlement and, on June 10, 2005, filed a notice of intent to sell, subject to higher offers "for the sum of $35,000.00 all right, title and interest" of the estate in the Millbank claim to Michael Ambler ("Ambler") [3] and Marguerite Reeves ("Reeves"), former wife of the debtor, and holder of a conceded junior lien of $250,000 on the proceeds of the Millbank claim. Ross, on June 20, 2005, filed the present motion,

---

2. The Ross motion also sought enforcement of a proposed settlement agreement filed by the trustee and then withdrawn by him prior to hearing. The court denied this request on July 22, 2005.

3. Ambler has proposed to finance Reeves' pursuit of the appeal of the judgment in the Millbank claim. In light of its conclusions, the court finds it unnecessary at this time to address issues specifically related to Ambler, including whether he has standing to object.

and, on July 11, 2005, filed a "Notice of Objection to Sale and Intent to Make a Higher Offer," indicating that if the sale goes forward, he "intends to bid an amount equal to the full amount of [his] charging lien." (Ross Obj. at 1.)

Reeves and Ambler filed an objection to the Ross motion on the following grounds: that (1) Ross seeks to "determine the validity, priority, or extent of a lien" by motion rather than by commencing an adversary proceeding pursuant to Fed. R. Bankr.P. 7001; (2) the judgment in the Millbank action lacks an affirmative recovery, a necessary condition for attachment of an attorney's charging lien; (3) Ross' purchase of the judgment would violate New York's statutes on champerty; (4) the possibility of a negligence claim against Ross should preclude him from being able to credit-bid on the judgment; and (5) the lien of Reeves, as a former spouse, should, as a matter of equity, enjoy priority superior to that of the Ross lien.

The court held a hearing on the Ross motion on August 10, 2005, at which time only Ross testified. He entered into evidence a detailed documentation of his outstanding prepetition fees for the Millbank action to support a charging lien of $727,000. (Exh. 1.)

## III.

### DISCUSSION

#### A.

*Requirement of an Adversary Proceeding*

■ Reeves[4] argues that the Ross motion attempts to circumvent the requirement of Fed. R. Bankr.P. 7001, which states, "The following are adversary proceedings: ... (2) a proceeding to determine the validity, priority, or extent of a lien." Reeves contends that the Ross claim may be allowed only after Ross has, through an adversary proceeding, established the validity and priority of his claim. Reeves misconstrues Rule 7001. The relevant bankruptcy rule is Rule 3012, which provides:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest *on motion* of any party in interest and on notice to the holder of the secured claim and any other entity as the court may direct. (emphasis added).

As Ross seeks a determination of the value of his claim, he has properly requested so by motion, pursuant to Rule 3012. The Advisory Committee Note to Rule 3012 state that an adversary proceeding under Rule 7001 "is relevant to the basis of the lien itself," while a motion under Rule 3012 is to value the lien. Accordingly, it is Reeves, as the objector who questions the validity and priority of the Ross lien, who is required to commence an adversary proceeding.

Courts have exercised their discretion to reach the merits of objections, similar to those of Reeves, raised in the context of a secured creditor's motion. *See, e.g. In re Banks,* 94 B.R. 772 (Bankr.M.D.Fla.1989) (court ruled on merits of United States Trustee's objection to validity of an attorney's charging lien in context of the attorney's motion); *In re Command Services Corp.,* 102 B.R. 905, 909 (Bankr.N.D.N.Y. 1989) (denying a motion to vacate court's prior order in an attorney's fee application that the attorney's asserted charging lien was not valid).

---

4. The court's references to Reeves' position relate to the joint position of Reeves and Ambler.

The objections Reeves raises in relation to the validity or priority of Ross' lien involve questions of law, rather than fact. Because the parties have been accorded appropriate procedural and substantive safeguards in the present proceeding, the court will consider the merits of Reeves' objections without requiring an adversary proceeding on her part.

### B.

*Affirmative Recovery*

It is undisputed that New York law applies to Ross' charging lien on the Millbank claim. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law...The justifications for the application of state law are not limited to ownership interests; they apply with equal force to security interests."). In New York, attorneys' charging liens arise by operation of N.Y. Judiciary Law § 475, which states:

§ 475. Attorney's lien in action, special or other proceeding

From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

■ Reeves argues that the Millbank claim involves no affirmative recovery to which a charging lien may attach; that "the Debtor's share in his old law firm [is] an asset that the debtor already had" prior to the Millbank action. Reeves cites *In re Petition of Rosenman & Colin,* 850 F.2d 57 (2d Cir.1988), in support of her argument. In *Rosenman,* however, the attorney for a defendant who lost on her counterclaim sought to enforce his lien against property which the client retained. In the Millbank claim, the arbitrator, and subsequently, the state court, awarded specific amounts to Millbank on its claim arising from the debtor's note and to the debtor on his counterclaim for his share of the partnership, resulting in a net recovery in favor of the debtor. Section 475 explicitly addresses this type of situation by providing that a lien arises in favor of a defendant's attorney upon "service of an answer containing a counterclaim."

### C.

*Champerty Issue*

■ Reeves asserts that Ross may not bid on or purchase the Millbank claim because to do so would violate New York's laws of champerty, as provided in N.Y. Judiciary Law § 488, which states, in relevant part:

An attorney or counselor shall not:

1. Directly or indirectly, buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon.

This argument, however, overlooks the exception set forth in N.Y. Judiciary Law § 490, which states, in relevant part:

Sections four hundred eighty-eight and four hundred eighty-nine of this chapter

do not prohibit the receipt of a ... thing in action, in payment for ... services actually rendered, or for a debt antecedently contracted ....

Ross' claim falls squarely within this exception, and, thus, the objection lacks merit.

### D.

### *Possible Estate Claim against Ross*

Reeves lacks standing to bring a negligence action against Ross, and the trustee, the only party with the standing to pursue such an action, has not indicated any grounds for doing so. Accordingly, the court finds this argument speculative and without adequate foundation.

### E.

### *Lien Priority and Public Policy*

■ Reeves' final argument, that it would be inequitable as a matter of policy to afford an attorney's charging lien a higher priority than a former spouse's claim for support, is one that has been considered by a New York court under circumstances which parallel those of the present proceeding. *Spinello v. Spinello,* 70 Misc.2d 521, 334 N.Y.S.2d 70 (N.Y.Sup. Ct.1972), concerned the competing claims of an attorney with a statutory charging lien and of the client's ex-wife to the proceeds of an arbitration action, subsequently confirmed by the state court, to recover the value of a partnership interest. Despite finding that the ex-wife's lien was prior in time to the attorney's, the court nevertheless held that, as a matter of public policy, the attorney's charging lien was entitled to priority over all others. *Id.; Cf. LMWT Realty Corp. v. Davis Agency, Inc.,* 85 N.Y.2d 462, 626 N.Y.S.2d 39, 649 N.E.2d 1183 (1995) ("the attorney's services created the fund at issue and under those circumstances the attorney's charg-

ing lien must be given effect, even though a prior lien against the specific fund exists"). Reeves reliance on *Daley v. Daley,* 230 A.D.2d 182, 657 N.Y.S.2d 175 (N.Y.App.Div.1997) is inapposite to the circumstances of the present proceeding. In *Daley,* the same attorneys represented the husband in both his employment action and his divorce. Despite having an attorney's charging lien on the employment claim, the husband's attorneys negotiated with his former wife a settlement in the divorce action explicitly granting her a lien on the proceeds of the employment action and providing that she "shall be paid any balance due her prior to the disbursement of the funds to any other third party." *Id.,* 657 N.Y.S.2d at 177. The court in *Daley* emphasized "the peculiar confluence of events and participants" that led to its decision that a former wife had priority over the attorney's charging lien. *Id.* at 179. In this proceeding the Ross lien remains the superior lien.

### F.

### *Right to Credit–Bid*

■ Bankruptcy Code § 363(k) states:
(k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

Reeves' objection to the Ross motion provides no cause that would justify the court's denial of Ross' right to credit-bid at the proposed sale up to the amount of his charging lien. This objection is overruled.

### G.

### *Amount of the Ross Lien*

■ Ross has provided detailed time sheets to substantiate his claim and attest

to the complexity of the Millbank action and the prevailing rates for attorneys in the New York area. Neither Reeves nor the trustee nor any other party in interest has disputed any of these items. Accordingly, the court finds the value of Ross' secured claim to be equal to his unpaid fees of $727,000.

## IV.

### *CONCLUSION*

In accordance with the foregoing discussion, the court concludes that the Reeves objections to the Ross motion are overruled and that Ross is entitled to creditbid at the trustee's proposed sale of the Millbank claim up to the amount of his claim, which the court finds to be $727,000. It is

SO ORDERED.